STATE OF MINNESOTA

IN SUPREME COURT

A13-0121

Court of Appeals                                                    Anderson, J.
                                                      Took no part, Page, J.


State of Minnesota,

                        Respondent,

vs.                                                      Filed:  September 10, 2014
                                                      Office of Appellate Courts
Corey Joel Eichers,

                        Appellant.


_____


Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Carl Ole Tvedten, Assistant County
Attorney, Saint Cloud, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant State
Public Defender, Saint Paul, Minnesota; and

Ryan M. Schultz, Benjamin C. Linden, Special Assistant State Public Defenders, Robins,
Kaplan, Miller & Ciresi L.L.P., Minneapolis, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Chestnut Cambronne P.A., Minneapolis, Minnesota, for
amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.


_____


1

1.      Removing a package from an airport mailroom conveyor belt and placing it on the floor to be sniffed by a narcotics-detection dog is not a seizure under either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution because the movement of the package does not constitute meaningful interference with the addressee's possessory interests in the package.

2.      No reasonable expectation of privacy is violated when an officer conducts a minimally intrusive dog sniff of a package in an airport mailroom, and thus the dog sniff in this case was not a search for purposes of either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution.

3.      Because neither a search nor a seizure occurred, there was no violation of either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution, regardless of whether the officer's actions were reasonably justified, and the district court did not err by denying the motion to suppress evidence.

Affirmed.

O P I N I O N

ANDERSON, Justice.

This case presents the questions of whether, for purposes of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution, the movement of a package from a conveyor belt to the floor at an airport mail facility for purposes of a dog sniff constitutes a seizure; whether a dog sniff of such

a package constitutes a search; and whether, if these actions constituted a seizure or a search, the seizure or search was reasonable.

Appellant Corey Joel Eichers, charged with two counts of a first-degree controlled substance crime, moved to suppress evidence of a package containing cocaine and methamphetamine that was opened by investigators in a UPS mail area following a positive drug alert by a trained narcotics-detection dog. Eichers argued that the detention of the package in the mail area, prior to the positive dog sniff, was an unreasonable seizure, and that the dog sniff was an unreasonable search of the package. The Stearns County District Court denied Eichers's motion, concluding that the initial detention and dog sniff of the package did not constitute a search or seizure.

The court of appeals affirmed the denial of Eichers's suppression motion, but on other grounds. *State v. Eichers*, 840 N.W.2d 210, 223 (Minn. App. 2013). In a divided decision, the court of appeals concluded that there was both a search and a seizure, but that the investigators had reasonable, articulable suspicion for both. *Id.* at 218-23. Eichers now appeals, arguing that the package was both seized and searched without a reasonable, articulable suspicion of criminal activity.

On September 23, 2011, at 6:10 a.m., Airport Police Narcotics Investigator Mark Meyer observed a package on a conveyor belt at the UPS Parcel Sorting Station at the Minneapolis-Saint Paul International Airport. Investigator Meyer removed the package from the conveyor belt to examine the air bill. The package was sent by Alec Bublitz from a UPS store in Phoenix, Arizona, and it was addressed to "Cory" Eichers in Avon, Minnesota. Investigator Meyer was suspicious of the package because 1) Phoenix was

known to be a source city for narcotics, and Investigator Meyer had found narcotics shipped by UPS from Phoenix many times in the past; 2) the package was sent by air service, which Investigator Meyer indicated was a preferred shipment method for narcotics because of the fast delivery time; and 3) the package appeared to be shipped from one individual to another, as opposed to shipment to or from a business, which was unusual for air service because of the higher cost. Investigator Meyer reported that "[a]ll of these characteristics are consistent with previous packages that [he] ha[d] found to contain illegal substances."

Because Investigator Meyer found these characteristics to be suspicious, he placed the package on the floor along with 20-25 other packages. He then brought a trained narcotics-detection dog into the area and commanded the dog to "seek dope." The dog alerted to the package addressed to Eichers, indicating an odor of narcotics emanating from that package. Based in large part on the dog's alert, Investigator Meyer obtained a warrant authorizing him to open and search the package. Upon opening the package, Investigator Meyer found 225.1 grams of cocaine and 29.6 grams of methamphetamine concealed in a blue plastic coffee container full of coffee grounds.

Later that day, Investigator Meyer arranged for law enforcement officers in Stearns County to make a controlled delivery of the package to Eichers. When investigators attempted to deliver the package at Eichers's residence that afternoon, they found no one there. Following a second failed delivery attempt three days later, a Stearns County Sheriff's Deputy called the phone number listed on the package to arrange delivery. Eichers returned the call and said that he had been expecting a package. A

4

member of the Central Minnesota Drug and Gang Task Force delivered the package to Eichers while two investigators watched. The investigators saw Eichers walk out of his residence with the package and put the package in his vehicle, at which point they placed him under arrest. After waiving his *Miranda* rights, Eichers stated that he was buying and reselling drugs to make money and had previously received approximately five drug packages through the mail.

Eichers was charged with two counts of a first-degree controlled substance crime. Prior to his trial, Eichers moved to suppress evidence of the contents of the package. He contended that the initial detention of the package was a "seizure" and the dog sniff was a "search," and that because both the seizure and the search were unsupported by reasonable, articulable suspicion, they violated the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution. The State conceded that the package likely was seized when it was removed from the conveyor belt and held for a dog sniff. But the State argued that Investigator Meyer had a reasonable, articulable suspicion of criminal activity because of the source city of the package and type of mailing, and because the package was sent person to person. Investigator Meyer indicated that he had learned through his experience and training that these were all common characteristics of a package containing contraband.

The district court concluded that the initial detention of the package for a dog sniff was not supported by a reasonable, articulable suspicion of criminal activity, as Investigator Meyer's test for subjecting the package to a dog sniff "would presumably be met by any package shipped person to person from a border state, coastal state or urban

5

location by air service or some other expedited delivery method." But the district court concluded that the package was not seized during its initial detention because, following the Eighth Circuit's decision in *United States v. Va Lerie*, 424 F.3d 694, 707 (8th Cir. 2005), "a Fourth Amendment seizure occurs only when it is shown that the detention of the entrusted property: 1) delays a passenger's travel or significantly impacts a passenger's freedom of movement, or 2) delays timely delivery of the property, or 3) deprives the carrier of custody of its property." Concluding that none of these situations applied, and noting the absence of clear Minnesota precedent on this issue, the district court concluded that the detention was not a seizure and did not require justification by reasonable suspicion. The district court also held, citing *United States v. Place*, 462 U.S. 696 (1983), that a dog sniff of a package entrusted to a common carrier for air transport was a minimal intrusion on privacy interests, as the privacy of the contents would be preserved unless the package contained contraband. Thus, the district court concluded that the dog sniff was not a search and no reasonable suspicion was required.

The court of appeals affirmed the district court, although on other grounds, in a sharply divided decision. *Eichers*, 840 N.W.2d at 223. Two judges concluded that a seizure had occurred because Investigator Meyer asserted dominion and control over the package by removing it from the conveyor belt and placing it on the floor, and that a dog sniff of a package is a search that requires a reasonable, articulable suspicion of criminal activity under the Minnesota Constitution. *Id.* at 218-20. But the court of appeals also concluded that these actions, even if they constituted a search and seizure, violated neither the United States nor Minnesota Constitution because the factors observed by

6

Investigator Meyer supported a reasonable, articulable suspicion that the package might contain contraband. *Id.* at 220-22. A special concurrence concluded that although reasonable suspicion was present, Investigator Meyer did not need reasonable suspicion because the initial detention and dog sniff were neither a seizure nor a search. *Id.* at 223-30 (Ross, J., concurring specially). The dissent concluded that there was both a search and a seizure and that Investigator Meyer did not have a reasonable suspicion for either of these actions. *Id.* at 230-32 (Hudson, J., dissenting).

Eichers appealed, asking us to review whether the initial detention and diversion of the package, and the subsequent dog sniff, violated the prohibitions on unreasonable searches and seizures found in the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution.

I.

The first issue raised by Eichers is whether there was an unreasonable seizure of the package, in violation of either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution. When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011). But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012).

Because the relevant language of the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution is identical[1] and Eichers does not argue that the Minnesota Constitution requires any higher level of protection for seizures of property than that which is provided by the U.S. Constitution, these provisions will be analyzed together. *Kahn v. Griffin*, 701 N.W.2d 815, 825 (Minn. 2005) ("Generally, we do not independently apply our state constitution absent language, concerns, and traditions unique to Minnesota.").

A.

The Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Thus, to determine if there was an unreasonable seizure, we must first determine whether the package was seized by Investigator Meyer when he removed it from the airport conveyor belt and detained it for a dog sniff. If the package was not seized, further analysis of whether the detention was unreasonable is not required.

In the same way that not all contact between citizens and police constitutes a seizure, *State v. Cripps*, 533 N.W.2d 388, 390 (Minn. 1995), "[n]ot all police dealings with containers and other items are sufficiently intrusive to require that they be

---

[1] Both provisions provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." *Compare* U.S. Const. amend. IV, *with* Minn. Const. art. I, § 10.

characterized as seizures," 4 Wayne R. LaFave, *Search and Seizure*, § 9.8(e), at 1006 (5th ed. 2012); *see also Va Lerie*, 424 F.3d at 701-02 ("[N]ot every governmental interference with an individual's freedom of movement raises such constitutional concerns that there is a seizure of the person. It necessarily follows that not every governmental interference with a person's property constitutes a seizure of that property under the Constitution." (citations omitted) (internal quotation marks omitted)).

The Supreme Court has held that a " 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Court noted that "[w]hile the concept of a 'seizure' of property is not much discussed in our cases, this definition follows from our oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment—meaningful interference, however brief, with an individual's freedom of movement." *Id.* at 113 n.5. In *United States v. Jacobsen*, DEA agents were summoned to the Minneapolis-Saint Paul Airport Federal Express office to remove and conduct field testing on plastic bags from a damaged package that was partially opened and torn by a forklift. *Id.* at 111-12. The Court concluded that "the agents' assertion of dominion and control over the package and its contents" constituted a seizure, but that this seizure was not unreasonable and so did not violate the Fourth Amendment. *Id.* at 120-21.

Eichers and the State highlight different aspects of *Jacobsen*. Eichers argues that a seizure occurred because Investigator Meyer asserted physical control over the package for law enforcement purposes and exercised dominion and control over the package by

detaining it for inspection. The State, in contrast, argues that there was no seizure because Investigator Meyer's actions in detaining the package did not interfere with any of Eichers's possessory interests in the package. But the discussion of dominion and control in *Jacobsen* was in the context of custody, not just physical movement, as the Court stated:

> Both the Magistrate and the District Court found that the agents took custody of the package from Federal Express after they arrived. Although respondents had entrusted possession of the items to Federal Express, the decision by governmental authorities to exert dominion and control over the package for their own purposes clearly constituted a "seizure," though not necessarily an unreasonable one.

*Id.* at 120 n.18. This suggests that the seizure occurred because Jacobsen's possessory interest in Federal Express retaining custody of the package was infringed, and that a technical exercise of control over the package by the officers, standing alone, does not impact custody and would not necessarily constitute a seizure. Thus, we conclude that the controlling test for whether there is a seizure under *Jacobsen* is whether there is "meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. While this standard may, in some instances, be met through an exercise of dominion and control alone, dominion and control without a meaningful interference with a possessory interest is insufficient to establish a seizure.

## B.

We turn then to two pre-*Jacobsen* cases, *United States v. Van Leeuwen*, 397 U.S. 249 (1970), and *United States v. Place*, 462 U.S. 696 (1983), to determine what possessory interests a person might have in a mailed package. In *Van Leeuwen*, the

10

Supreme Court stated that a person has an interest in the privacy of letters and packages even after the items are mailed. 397 U.S. at 251. Thus, "[t]he significant Fourth Amendment interest [is] in the privacy of this first-class mail." *Id.* at 253. This privacy interest may implicate whether mail can be detained, as the Court also noted that Congress cannot encumber the flow of the mail "by setting 'administrative officials astride the flow of mail to inspect it, appraise it, write the addressee about it, and await a response before dispatching the mail' to him." *Id.* at 251-52 (quoting *Lamont v. Postmaster Gen.*, 381 U.S. 301, 306 (1965)). But the Court also stated that "even first-class mail is not beyond the reach of all inspection." *Id.* at 252. In *Van Leeuwen*, in which mail was delayed for 29 hours before a search warrant arrived, the Court concluded that the "detention of mail could at some point become an unreasonable seizure," but that "[n]o interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited." *Id.* at 252-53.

In *United States v. Place*, the Court discussed how a seizure can occur even "after the owner has relinquished control of the property to a third party," but noted that different possessory interests are involved in on-the-spot inquiries, such as immediate exposure of luggage to a narcotics-detection dog, than in inquiries that involve transporting the property to another location. 462 U.S. at 705-06. While the Court acknowledged that "some brief detentions of personal effects may be . . . minimally intrusive of Fourth Amendment interests," the Court did not state clearly whether a detention of property could be so minimal as to not constitute a seizure at all. *Id.* at 706.

11

Because guidance from the Supreme Court on what constitutes meaningful interference with a possessory interest in property is limited and we have not previously addressed this issue,[2] we elect to examine applicable federal court of appeals decisions for guidance on this issue. Circuit courts have attempted to apply *Jacobsen*, using the background of *Van Leeuwen* and *Place*, to cases involving mail and checked luggage[3] on numerous occasions, but have often reached conflicting results.

In *United States v. England*, the Ninth Circuit read the Supreme Court precedent to mean that timely delivery of a mailed package is a person's paramount possessory interest in that package. 971 F.2d 419, 420-21 (9th Cir. 1992). The court noted that "[i]t is the extent of the interference with the defendant's possessory interest in his property, not the physical movement of the property, that determines whether a seizure has

---

[2] Although we have previously addressed the definition of a seizure in the context of detaining an individual, *see State v. Wiegand*, 645 N.W.2d 125, 132 n.7 (Minn. 2002) ("[I]n Minnesota a seizure occurs when a reasonable person would believe he or she was not free to leave."), we have not addressed the meaning of a seizure in the context of property.

[3] Eichers argues that cases involving checked luggage are not analogous to cases involving mailed packages. We disagree. Checked luggage and mailed packages both involve entrusting property to a third party for delivery. Whereas the seizure of carryon luggage may also result in a de facto seizure of the person, *see Place*, 462 U.S. at 708, checked-luggage cases, like mail cases, do not necessarily raise such concerns. Owners of checked luggage or mailed packages have more limited possessory interests than people who accompany their property because there is no freedom-of-movement interest at issue unless there is a delay in delivering the property. Passengers who check luggage, like people who mail packages, also do so knowing that their property will be handled by strangers and that the property's outward characteristics will be observed. *See United States v. Ward*, 144 F.3d 1024, 1033 (7th Cir. 1998). We therefore see no basis for determining that a person has a greater possessory interest in a mailed package than in a piece of checked luggage.

12

occurred." *Id.* at 420. The Ninth Circuit concluded that there was no meaningful interference, and thus no seizure, when postal inspectors set aside packages for inspection by a narcotics-detection dog without causing a delay in the delivery. *Id.* at 420-21. The Ninth Circuit has consistently followed *England* and held that detention of mail or checked luggage does not constitute a seizure if it does not impact the delivery time. *See United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160 (9th Cir. 2007); *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002).

The Eighth Circuit also has addressed the issue of when a seizure of property entrusted to a carrier occurs in an en banc opinion that purported to overrule any prior conflicting case law. *See Va Lerie*, 424 F.3d at 700 ( "It can be argued our court has not spoken with a consistent voice when considering what constitutes a seizure in cases involving law enforcement's interference with luggage or mailed packages."). The court in *Va Lerie* laid out three factors of meaningful interference with a possessory interest, inquiring whether 1) the detention of property impacted a person's freedom of movement; 2) the detention delayed timely delivery of the property; and 3) law enforcement deprived the carrier of custody of the property. *Id.* at 707. The court also noted that when examining the third indicator of whether the carrier was deprived of custody of the property, the relevant question is whether the passenger's property might be handled in the same way when in the carrier's custody. *Id.* at 707 n.7. The court in *Va Lerie* then applied this standard and concluded that the removal of checked luggage from

13

a bus to a room in the bus terminal did not constitute a meaningful interference with the passenger's possessory interests, and, therefore, it was not a seizure.[4]  *Id.* at 708.

We agree with *Va Lerie* that focusing only on the interest in a timely delivery, such as the Ninth Circuit has, and thus finding a seizure only in cases of late deliveries, fails to recognize other legitimate possessory interests that individuals have in mailed packages.  In particular, we find persuasive the Eighth Circuit's identification of a possessory interest in having the carrier retain custody in the package, because, as the court explained in *Va Lerie*, it speaks to a person's reasonable expectations for how the property might be handled when in the carrier's custody.  *See id.* at 707 n.7.  While the Eighth Circuit focused its review of custody on whether law enforcement actions are of a type that a carrier might reasonably perform, we also note that custody may be lost in any number of ways, including the carrier's relinquishment of responsibility for the package by entrusting it to law enforcement for delivery.

We therefore conclude that a seizure of property must entail meaningful interference with a possessory interest in that property and that possessory interests may include, but are not limited to, timely delivery, retention of custody by the carrier, and a

---

[4]  We acknowledge that the Eighth Circuit has not applied *Va Lerie* consistently since it was announced.  *Compare United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir. 2006) (concluding that there was a seizure when an officer moved a mailed package from the ordinary progress of the mail and diverted it for further inspection), *with United States v. Zacher*, 465 F.3d 336, 338-39 (8th Cir. 2006) (concluding that moving a package to the floor for a dog sniff did not constitute a seizure unless the package was delayed past its delivery time because it did not involve a change in custody or infringe on the addressee's freedom of movement).  Notwithstanding the conflicting decisions in the Eighth Circuit, we consider *Va Lerie* both persuasive and helpful here.

14

person's freedom of movement. We disagree with Eichers's interpretation of *Jacobsen*, which would find a seizure wherever there was any exercise of dominion and control, no matter how minimal, over a package by an agent for examination purposes, and instead conclude that dominion and control are relevant only as a means of showing that there has been meaningful interference with a possessory interest.

C.

Applying this analysis to the case at hand, we must identify whether any of Eichers's possessory interests were infringed by the detention of the package prior to the dog sniff. Eichers argues that the package was seized because he had a possessory interest in having the package remain in the possession and control of UPS and that Investigator Meyer interfered with this interest when, absent directions from UPS, he moved the package from the conveyor belt to the floor for a dog sniff. The State argues that the movement of the package did not constitute a seizure because it did not interfere in any meaningful way with Eichers's possessory interests, as his primary interests were that the package was timely delivered and that the contents of the package were not violated.

After establishing probable cause through the dog sniff, Investigator Meyer did take custody of the package—removing it from UPS's control, transporting it to Saint Cloud, and arranging delivery for the package by another investigator. But although a seizure of the package did ultimately occur through an infringement of Eichers's possessory interest in the carrier retaining custody, Eichers is not challenging the reasonableness of that seizure. Looking next at Eichers's possessory interest in timely

15

delivery, Investigator Meyer removed the package from the conveyor belt for initial inspection at approximately 6:10 a.m. on September 23, 2011. After conducting the dog sniff, obtaining and executing a search warrant, and repackaging the contents, Investigator Meyer transported the package to a law enforcement center in Saint Cloud, arriving at approximately 12:30 p.m. the same day. The duration of Investigator Meyer's detention of the package prior to establishing probable cause, was, at most, a few hours, and delivery was attempted that same afternoon. In addition, Eichers does not argue that any delay from the initial detention infringed on his right to timely delivery. Therefore, we conclude that Investigator Meyer's actions in moving the package from the conveyor belt to the floor did not infringe on Eichers's right to a timely delivery of the package.

Eichers's possessory interest in the carrier's custody of the package was also not infringed until after Investigator Meyer had established probable cause as a result of the dog sniff. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (discussing a dog sniff as sufficiently reliable to establish probable cause). Investigator Meyer's handling of the package and placing it on the floor are both actions that a carrier might reasonably be expected to take. Investigator Meyer also initially detained the package on the carrier's premises and presumably would have returned the package to the conveyor belt if the dog sniff had been negative, and so there is no indication that UPS lost custody of the package during this initial examination. Therefore, Eichers is incorrect in claiming that his possessory interest in having the package remain in the possession and control of UPS

16

was infringed, as UPS retained custody and control over the package during the initial detention.[5]

Therefore, because Eichers has failed to establish any meaningful interference with a possessory interest he had in the package, we conclude that removing the package from the conveyor belt for the purpose of a dog sniff was not a seizure under either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution.

II.

We now review whether there was an unreasonable search for purposes of the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution when Investigator Meyer used a trained narcotics-detection dog to sniff the package after it was removed from the conveyor belt. Eichers argues that the package was searched because the dog sniff infringed his reasonable expectation of privacy and that the search was unreasonable because it was not supported by probable cause or even a reasonable, articulable suspicion. The State argues that a minimally intrusive dog sniff does not infringe any reasonable expectation of privacy, and so the dog sniff of the package was not a search. The State also argues that even if the dog sniff was a search, it

---

[5]    We reject Eichers' argument that a seizure through loss of custody occurs whenever law enforcement acts on its own, rather than at the specific direction of the carrier. This is not a distinction followed by any court except a panel of the Eighth Circuit in *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1075-76 (8th Cir. 2009). The requirement of specific carrier direction would limit officers' ability to use their expertise to identify packages and force them instead to rely on postal workers to determine which packages are suspicious and what actions should be taken. Such an approach would almost entirely negate the benefits of having a trained narcotics officer present.

17

only needed to be justified by a reasonable, articulable suspicion, which, the State argues, Investigator Meyer had. The district court concluded that there was no search; the court of appeals, in a divided decision, concluded that, even if there was a search, the search was sufficiently justified by Investigator Meyer's reasonable, articulable suspicion of criminal activity. *Eichers*, 840 N.W.2d at 223. We review legal determinations, such as whether there was a search and if that search was unreasonable, de novo. *Milton*, 821 N.W.2d at 798; *see Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("[D]eterminations of reasonable suspicion and probable cause should be reviewed de novo on appeal.").

A.

A search under the Fourth Amendment to the U.S. Constitution occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *Jacobsen*, 466 U.S. at 113. In *Van Leeuwen*, the Court stated that "[l]etters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles." 397 U.S. at 251. Thus, a person clearly has a reasonable expectation of privacy as to the content of his or her mail. But the Court also stated that "even first-class mail is not beyond the reach of all inspection." *Id.* at 252. The question, therefore, is whether a dog sniff infringes on the reasonable expectation of privacy that a person has for a mailed package. Although a dog sniff reveals little information about the contents of the package—merely whether it likely does or does not

18

contain drugs—it does perhaps constitute a higher level of inspection beyond simply observing the outward characteristics of a package as described in *Van Leeuwen*.

In *United States v. Place*, the Supreme Court concluded that a dog sniff is a unique type of investigation and that a dog sniff of luggage in a public place does not constitute a search within the meaning of the Fourth Amendment. 462 U.S. 696, 707 (1983). Explaining why a dog sniff of luggage is not a search, the Court said:

> A "canine sniff" by a well-trained narcotics detection dog . . . does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
>
> In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure.

*Id.*

The Supreme Court in *Illinois v. Caballes* clarified that in situations in which a dog sniff is not a search, no level of suspicion is required because actions that do not constitute a search or a seizure are not subject to scrutiny under the Fourth Amendment. 543 U.S. 405, 408-09 (2005). The Court also explained that any interest in possessing contraband is not a "legitimate" privacy interest, and so official conduct that reveals only contraband, without disturbing any privacy rights related to innocent activity, does not

19

violate any reasonable expectation of privacy. *Id.* Thus, the Court concluded that a dog sniff that "reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410.

Although Eichers argues that *Place* and *Caballes* can be distinguished from his situation because those cases took place on public property, as opposed to the property of a private company like UPS, we disagree that this distinction is relevant here. The private nature of the location where the dog sniff took place may be relevant in situations in which the defendant has a higher expectation of privacy due to the location, such as a residence, but a mailroom at an airport is not such a location. *See Florida v. Jardines*, __ U.S. __, 133 S. Ct. 1409, 1418 (2013) (Kagan, J., concurring) (concluding that the home is "the most private and inviolate (or so we expect) of all the places and things the Fourth Amendment protects," and so a dog sniff of a home and its surrounding area should be classified a search). While Eichers may be correct that the general public could not enter the UPS mailroom at issue here, Eichers would have been unable to enter this location as well, so he had no special expectation of privacy there. Therefore, a dog sniff in an airport mailroom is not analogous to a dog sniff in or near a private residence because a defendant has a strong expectation of privacy in his home that does not correlate to the expectations of privacy in a mailroom, even if that mailroom is operated by a private company. We conclude that because a dog sniff of a mailed package, like the dog sniff of luggage in *Place*, reveals only contraband, and because no legitimate privacy interest is compromised, a dog sniff in this situation is not a search for purposes of the Fourth Amendment.

20

B.

Although a dog sniff of a package in an airport mailroom is not a search under the Fourth Amendment to the U.S. Constitution, we will also review Eichers's contention that this situation constitutes a search under Article I, Section 10, of the Minnesota Constitution because we have previously held that the Minnesota Constitution provides greater protection than the U.S. Constitution in some circumstances involving drug detection by narcotics-trained dogs. *See, e.g.*, *State v. Carter*, 697 N.W.2d 199, 210-12 (Minn. 2005).

Although we are free to offer protections under the Minnesota Constitution that exceed the protections of the United States Constitution, we will not do so cavalierly, especially in cases in which the relevant language of the two constitutions is identical. *Id.* at 210. But in *State v. Carter*, we concluded that although a drug-detection dog sniff in an area outside a storage unit was not a search under the Fourth Amendment, it was a search requiring a reasonable, articulable suspicion of criminal activity for purposes of the Minnesota Constitution. *Id.* at 211-12. Noting our concerns about the unrestrained use of narcotics dogs, especially in light of the risk of false alerts, we concluded that there was good reason to guard against the random use of drug-detection dogs in an area immediately outside a storage unit, which could contain a significant number of personal items and even possibly be the site of some personal activities. *Id.* at 210-11. We later applied this holding to a situation involving a hallway outside an apartment, concluding that a reasonable, articulable suspicion of criminal activity was also required for a dog sniff in this area. *State v. Davis*, 732 N.W.2d 173, 181-82 (Minn. 2007).

The primary issue is whether the reasoning set out in *Carter* and *Davis* should be extended to mailed packages. Eichers argues that we should follow *Carter* and *Davis* because, like a storage unit or apartment, a package can store personal effects. But *Carter* and *Davis* are easily distinguished from the facts in Eichers's case. In *Carter* we noted that part of the reason for an expectation of privacy in a storage unit is the capability of the unit, like a residence, to store a significant amount of personal items and be the site of personal activity. 697 N.W.2d at 210-11. A mailed package does not give rise to the same concerns regarding personal activity, and the number of personal items a package can contain is significantly lower. A residence or storage unit is a window into a person's life in a way that a mailed package is not.

In addition, the concerns we noted in *Carter*, 697 N.W.2d at 210, regarding the risk of dog-sniff "false alerts" are less problematic in a situation involving a mailed package than in a situation involving a storage unit or apartment. A false alert on a mailed package would generally lead only to opening that package, which can be repackaged with minimal delay and burden to the owner, whereas a false alert on a person, storage unit, or apartment would lead to a much more involved and disruptive search. *See Place*, 462 U.S. 696 at 707 (citing the lack of embarrassment and inconvenience to the owner as reasons why dog sniffs are unique investigative tools). *But see, e.g.*, *Doe v. Renfrow*, 475 F. Supp. 1012 (N.D. Ind. 1979) (false alert during a random dog sniff of students at a school that resulted in nude search of a 13-year-old girl), *aff'd in part, rev'd in part*, 631 F.2d 91 (7th Cir. 1980); Leslie A. Lunney, *Has the Fourth Amendment Gone to the Dogs?: Unreasonable Expansion of Canine Sniff*

22

*Doctrine to Include Sniffs of the Home*, 88 Or. L. Rev. 829, 873-75 (2009) (arguing that dog-sniff searches of homes are distinguishable from sniffs of luggage or mail because "the search of a home on the basis of a positive canine sniff would be both probing and expansive"). In addition, a false alert on a package is unlikely to result in the immediate seizure of a person because the owner is not present, whereas in cases of a storage unit or apartment it is possible that the owner will be present and could be detained, leading to a much higher level of intrusion and disruption based on the false alert. The concerns voiced in *Carter* about random dog sniffs are therefore less relevant in cases involving mail.

Because the privacy interest in a mailed package is much lower than the interest in the privacy of a home or a storage unit, and because the concerns voiced in *Carter* about the random use of dog sniffs are less problematic with mailed packages, we decline to extend *Carter* and *Davis* to include dog sniffs of mailed packages as searches requiring a reasonable, articulable suspicion of criminal activity. Because we see no "language, concerns, and traditions unique to Minnesota" on the issue of whether a dog sniff of a mailed package constitutes a search, we conclude that Article I, Section 10, of the Minnesota Constitution does not offer any greater protections in this situation than the Fourth Amendment to the U.S. Constitution. *Kahn*, 701 N.W.2d at 825. We agree with the district court that the dog sniff of the package was not a search for purposes of either the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution.

## III.

Because there was neither a search nor a seizure, Investigator Meyer's initial detention of the package and his use of a trained narcotics-detection dog to perform a dog sniff on the package fall outside the scope of the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution, and we need not address whether Investigator Meyer's actions were reasonably justified. Therefore, although we do so on different grounds, we affirm the court of appeals' decision upholding the district court's order denying Eichers's motion to suppress evidence.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.