LILLEHAUG, Justice
(dissenting).
Minnesotans have a reasonable expectation of privacy when they put their household waste in opaque bags and do what the government requires: place the bags in closed containers for collection, compaction, and conveyance to a lawful disposal site. I respectfully disagree with the majority that the Minnesota Constitution does not require a search warrant before law enforcement may seize and search such household waste.
I.
On Thursday, February 2, 2012, David McMurray did what most residents of his Hutchinson neighborhood do on a Thursday: he moved his garbage container to the curb for pick-up. Like most everyone else on that Thursday, McMurray placed opaque bags containing household waste in a container that complied with a municipal ordinance: a “clean, rust-resistant, watertight, non-absorbent and washable closed container[], approved for the purpose by the city.” Hutchinson, Minn., Code of Ordinances § 51.03 (2013). In Hutchinson, that closed container was furnished by Waste Management, the city franchisee.
Every week the Waste Management driver would take McMurray’s bags from the closed container at the curb, throw the bags into the truck, compact the bags with the neighbors’ garbage, and deposit the compacted household waste in the local landfill. But Thursday, February 2, was different. Based oii a tip, a Hutchinson *696 police officer called the driver and arranged for McMurray’s bags to receive special treatment. The officer directed that, rather than being thrown in the truck, compacted with the neighbors’ bags, and taken to the landfill, McMurray’s bags be set aside for a special law enforcement inspection.
Not surprisingly, the city’s franchisee did as told. Shortly after picking up and segregating McMurray’s bags, Waste Management delivered them to the officer, who took them to the police station. Opening the bags, the officer sifted through the household waste and found evidence of illegal narcotics. The officer used that evidence as probable cause for a warrant to search McMurray’s residence. That search led to McMurray being charged with a third-degree controlled substance violation.
In the district court, McMurray moved to suppress the narcotics evidence on the ground that the warrantless seizure and search of his bags was unconstitutional. The district court denied the motion and convicted McMurray on stipulated facts. The court of appeals affirmed the conviction. State v. McMurray, No. A12-2266, 2018 WL 5021206 (Minn.App. Sept. 16, 2013). We granted review to decide whether, under the Minnesota Constitution, a citizen has a reasonable expectation of privacy in the contents of bags containing household waste placed in a closed container set out at the curb for lawful collection.
II.
McMurray acknowledges that the issue presented in this case has already been decided under the Fourth Amendment. The U.S. Supreme Court has held that there is no reasonable expectation of privacy in garbage placed at the curb for collection. California v. Greenwood, 486 U.S. 85, 39-41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).
Instead, McMurray invokes Article I, Section 10 of the Minnesota Constitution (“Section 10”), which contains a warrant requirement almost identical to the Fourth Amendment’s. Despite the similarity in wording, “[i]t is axiomatic that we are free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution.” State v. Askerooth, 681 N.W.2d 353, 361 (Minn.2004). And we have done so. See id. at 363 (search or seizure during traffic stop must be reasonable even when a minor law has been violated). See also State v. Davis, 732 N.W.2d 173, 181 (Minn.2007) (dog sniff in hallway outside apartment constitutes a search requiring a reasonable articulable suspicion of criminal activity); State v. Carter, 697 N.W.2d 199, 212 (Minn.2005) (dog sniff of an area outside storage unit was an unreasonable search under Section 10 when officers lacked a reasonable artic-ulable suspicion of criminal activity); State v. Fort, 660 N.W.2d 415, 419 (Minn.2003) (search of a passenger stopped for routine traffic violations exceeded the scope of a traffic stop); In re Welfare of B.R.K., 658 N.W.2d 565, 577-78 (Minn.2003) (legitimate expectation of privacy under Section 10 for short-term social guests, even if not under Fourth Amendment); Ascher v. Comm’r of Pub. Safety, 519 N.W.2d 183, 187 (Minn.1994) (temporary roadblocks to stop cars without objective, individualized articulable suspicion violate Section 10); In re Welfare of E.D.J., 502 N.W.2d 779, 783 (Minn.1993) (under Section 10, a person is “seized” when he reasonably concludes that he is not free to leave). But we have never applied Section 10 to the question presented today.
The majority is correct that we must not “lightly” interpret and apply Section 10 in *697 a manner different than the Fourth Amendment. The majority is also correct that we may do so if we have a clear and strong conviction that there is a principled basis for so doing, State v. Carter, 596 N.W.2d 654, 657 (Minn.1999). See Kahn v. Griffin, 701 N.W.2d 815, 828 (Minn.2005).
As the majority states, under Kahn v. Griffin, we will consider a departure from U.S. Supreme Court precedent under any of three conditions. 701 N.W.2d at 828. In my view, this case implicates the third condition: whether a U.S. Supreme Court holding (here, in California v. Greenwood) adequately protects Minnesotans’ basic rights and liberties. I have a clear and strong conviction that it does not. Our basic rights and liberties are at risk if government can seize and search Minnesotans’ household waste without a search warrant and, apparently, without even a reasonable articulable suspicion of wrongdoing.
III.
Under-both the U.S. Constitution and the Minnesota Constitution, warrantless searches in circumstances in which an individual has a reasonable expectation of privacy “are per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); In re Welfare of D.A.G., 484 N.W.2d 787, 789 (Minn.1992).
Prior to Greenwood, we recognized “that a householder may ordinarily have some expectation of privacy in the items he places in his garbage can.” State v. Oquist, 327 N.W.2d 587, 591 (Minn.1982) (noting that expectation but concluding that there was no such expectation when household waste was seized at the curb). Household waste contains a great deal of personal information that most of us expect will remain private. As the New Jersey Supreme Court put it, “Clues to people’s most private traits and affairs can be found in their garbage.” State v. Hempele, 120 N.J. 182, 576 A.2d 793, 802 (1990). One who examines garbage carefully can learn about the household members’ physical and mental health, sexual activities, financial status, consumer preferences, political affiliations, and personal relationships. See id. at 802-03; see also State v. Tanaka, 67 Haw. 658, 701 P.2d 1274, 1276-77 (1985). At different times, people dispose of drug bottles, birth control devices, sanitary products, printouts of emails, check registers, photos, and whatever they have recently read or eaten. It is the very privacy — the intimacy — of this personal information that makes it of great interest to others, ranging from law enforcement officers to private investigators to neighborhood snoops. Until a person’s garbage “ ‘ha[s] lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere,’ ” we “ ‘can readily ascribe many reasons why residents would not want their ... telltale refuse and trash to be examined by neighbors or others.’” People v. Krivda, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262, 1268 (1971) (emphasis omitted) ((quoting People v. Edwards, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713, 718) (1969)), vacated, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), remanded to 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457 (1973) (reaffirming original decision under the California Constitution).
Since the 1980s, when Oquist and Greenwood were decided, the nature of household waste has changed. This is not your grandfather’s garbage. Vastly more household waste is being recycled and the digital revolution is in full flourish. For good public policy reasons, government encourages and often requires citizens to segregate and set out or deliver for recy *698 cling digital devices such as obsolete or broken servers, routers, tablets, and cell phones. And waste disposal bags and containers may now contain digital material such as disks, chips, and flash drives. As the U.S. Supreme Court has recently and aptly recognized, digital devices and media, “[w]ith all they contain and all they may reveal, ... hold for many Americans ‘the privacies of life.’ ” Riley v. California, -U.S. -, 134 S.Ct. 2473, 2494-95, 189 L.Ed.2d 430 (2014) (citation omitted). This trend will only accelerate as we enter the “internet of things” in which hundreds of billions of objects will become digital devices. See generally Scott R. Peppet, Regulating the Internet of Things: First Steps Toward Managing Discrimination, Privacy, Security, and Consent, 93 Tex. L. Rev. 85, 89 (2014).
Not only has the nature of household waste changed, so has government’s ability to analyze it. Investigative tools are much more sophisticated and their probing capacity now extends well beyond the curti-lage. For example, law enforcement now has the ability to test — easily and economically — the DNA that can be gleaned from all manner of waste. The biological detritus of our existence inevitably ends up in household waste — on items such as used tissues and sanitary products, partially eaten food, discarded contact lenses, and things that we’ve simply touched — and there is little that people can do to avoid this, short of illegally burning or chemically treating every item. See Hempele, 576 A.2d at 808. For most people, maintaining the privacy of their household waste by burying it on the back forty is no longer a viable option.
What has not changed, and what should not change, is the long-standing presumption that a search warrant is required to search a Minnesotan’s container. A container is “any object capable of holding another object,” including “luggage, boxes, bags, clothing, and the like.” New York v. Belton, 453 U.S. 454, 460-61 n. 4, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The bags that hold household waste and the bins in which they must, be placed are simply forms of containers. Typically, in. the absence of an exception such as exigency or search incident to arrest, we require that the State obtain a warrant before it opens a Minnesotan’s container. “A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant.” United States v. Jacobsen, 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). “As for the contents of a container, the mere fact that the container itself is in plain view provides no basis for a war-rantless seizure and search of it, even assuming probable cause as to the contents.” In re Welfare of G.M., 560 N.W.2d 687, 694 (Minn.1997) (quoting 1 Wayne R. LaFave, Search and Seizure § 2.2(a), at 401-02 (3d ed.1996)) (but holding that warrantless search of a closed pouch on the suspect’s person was justified under the search incident to arrest exception). McMurray’s opaque bags and the closed receptacle in which they were placed were containers that should not have been seized and searched without a warrant.
But, holds the majority, based on Greenwood and our earlier Fourth Amendment cases, a citizen’s reasonable expectation of privacy in household waste is lost when the waste is set out for collection in an area accessible to the public. As Greenwood put it: “It is common knowledge that plastic garbage bags left on or át the side of a public street'are readily accessible to animals, children, scavengers, snoops, and other members of the public,” as well as to the waste disposal company. 486 U.S. at 40, 108 S.Ct. 1625 (footnotes omitted).
*699 With all respect to the majorities in Greenwood and here, it has always struck me as odd that, because raccoons, squirrels, and their nosy human counterparts try to get into household waste containers and . sometimes succeed, that should somehow determine the reasonableness of our expectations of privacy. That concept is as outdated as the dented metal garbage cans with partially open lids and visible garbage that I remember from childhood. Not only is household waste different than it was when Greenwood was decided, so are the bags and special containers into which the waste is placed for pickup or recycling. Like the City of Hutchinson, many municipalities now require closed, vermin-proof containers.[1]
The golden age of human scavenging, too, has passed. While most garbage containers set out for collection are not locked, and dumpster diving may still occur, government now recognizes that homeowners and renters have a legitimate expectation that the household waste they set out for disposal or recycling will not be strewn about or diverted but will be conveyed directly for reuse, burning, or interment. Minneapolis and Duluth, for example, prohibit turning over or upsetting the contents of any waste container,[2] and most municipalities have laws against littering. Minneapolis provides that “no persons other than those authorized by the city engineer shall remove any solid waste [from a container], except with the consent of the owner or occupant of the property served.” Minneapolis, Minn., Code of Ordinances § 225.590 (2014). Saint Paul, Blooming-ton, Duluth, Brooklyn Park, Plymouth, Saint Cloud, Moorhead, and other cities prohibit scavenging of recyclable materials.[3] I agree with the New Mexico Supreme Court, which said recently, “We *700 consider compliance with local ordinances governing the disposal of household garbage to support the reasonableness of an expectation that it will remain private from unwarranted inspection by the government.” State v. Crane, 329 P.3d 689, 696-97 (2014) (Vigil, C.J.).
While a number of state supreme courts have followed Greenwood and held that there is no reasonable expectation of privacy in household waste set out for collection,[4] others have recognized such an expectation, and have required a warrant,[5] or *701 at least a reasonable articulable suspicion,[6] for seizure and search. Having reviewed the arguments set forth in these cases, I have a definite and firm conviction that the better view is that a warrant is required.
IV.
The majority holds that, under the Minnesota Constitution, Minnesotans have no expectation of privacy in household waste at the curb, that the officer’s seizure and search was “lawful,” and that, essentially, household privacy ends at the sidewalks. Yet, while the question of whether at least a reasonable articulable suspicion is required for the seizure of household waste was fully briefed by the parties, the majority opinion “[pjrudently” decides not to answer that question. I would like to think that the question remains open, but the issue before us is the constitutional standard for the seizure and search of household waste. Rather than declaring the search “lawful,” the majority should have made clear that a warrantless seizure and search is not lawful without at least a reasonable articulable suspicion.
The diversion and inspection of household waste is more intrusive than investigative activities we have held require a reasonable articulable suspicion, such as dog sniffs in apartment hallways or outside storage units. See State v. Davis, 732 N.W.2d 173, 181 (Minn.2007); State v. Carter, 697 N.W.2d 199, 211-12 (Minn.2005). In Carter, we highlighted “the capability of the [storage] unit, like a residence, to store a significant amount of personal items and be the site of personal activity.” State v. Eichers, 853 N.W.2d 114, 126 (Minn.2014) (citing Carter, 697 N.W.2d at 210-11). By contrast, we determined in Eichers that “[a] mailed package does not give rise to the same concerns regarding personal activity, and the number of personal items a package can contain is significantly lower.” Id. In effect, “[a] residence or storage unit is a window into a person’s life in a way that a mailed package is not.” Id.
Household waste from a residence is far more analogous to the odors from a hallway or storage unit than to those from a mailed package, as household waste is a window into “people’s most private traits” and activities. State v. Hempele, 120 N.J. 182, 576 A.2d 793, 802 (1990). And people have less choice about what they must put out for waste disposal than what they put in a storage unit or in a mailed package.
*702 If Minnesotans’ household privacy ends at their sidewalks, there would be nothing unconstitutional about a government program to seize and perform a forensic inspection of the waste from every Minnesota household, all without the barest suspicion. Nor would it be unconstitutional for government agencies to scan and copy the data on all digital devices Minnesotans turn in for recycling. Of course, I am not aware that any such programs are contemplated. But, in an age in which government can surreptitiously gather almost every call and email,[7] it is not in the realm of fantasy to expect that, soon, government agencies will have the motivation and the technology to do so. This case would have been a good opportunity to make clear that, in the absence of reasonable articulable suspicion, government does not have a green light to broaden and deepen its efforts to acquire our most intimate information.
V.
In this case we should have said, as the United States Supreme Court said about cellphone searches: “Our answer to the question of what police must do before searching [Minnesotans’ household waste is] simple — get a warrant.” See Riley, — U.S. at -, 134 S.Ct. at 2495.
For all of these reasons, I respectfully dissent.

. In the words of one local ordinance, “Refuse when stored out-of-doors shall be stored in durable, rust-resistant, nonabsorbent, watertight, rodent-proof, easily cleanable containers with closefitting, fly-tight covers.” St. Paul, Minn., Code of Ordinances § 357.05(f)(2) (2014).

. See Minneapolis, Minn., Code of Ordinances § 225.590 (2014) ("No person shall turn over or upset the contents of any solid waste container without replacing the same.”); Duluth, Minn., Legislative Code § 24-3(a) (2014) ("No person shall willfully turn over or upset any vessel or container used for storing manure, recyclables, compost or solid waste, thereby spilling the contents or any portion thereof on any street, highway or public grounds or upon private property owned by another person_”).

. See St. Paul, Minn., Code of Ordinances § 357.11 (2014) (“It shall be unlawful for any person who is not authorized by the city or county to take or collect recyclable material set out for authorized collection programs within the city.”); Bloomington, Minn., City Code § 10.47 (2014) ("It shall be unlawful for any person who is not authorized by the City to remove, take for salvage or destroy any recyclable materials ... that have been set out for collection.”); Duluth, Minn., Legislative Code § 24-9 (2014) ("No person shall engage in the business of collecting or removing recyclables or solid waste within the city without first obtaining a license to do so, except that nonprofit organizations may collect recyclables as a fund raising operation.”); Brooklyn Park, Minn., Code of Ordinances § 98.09 (2014) ("It is unlawful for any person, except a law enforcement officer acting in the course of official business, to scavenge or otherwise collect refuse, recyclable materials or yard waste at the curb or from refuse containers or from recyclable materials containers without a license therefor from the city and an account relationship with the owner or occupant of the premises.”); Plymouth, Minn., City Code § 600.29, subd. 6 (2015) ("It is unlawful for any person other than the owner or owner's authorized employees or contractor to collect, remove, or dispose of designated recyclables after the materials have been placed or deposited for collection."); St. Cloud, Minn., Code of Ordinances § 244:30, subd. 7 (2007) (“It will be unlawful and an offense against this ordinance for any person, firm, or corporation other than the owner, lessee, or occupant of a residential dwelling, to pick up recyclable ma *700 terials for their own use.”); Moorhead, Minn., City Code § 3-4-9(E) (2014) ("It shall be unlawful and an offense against this section for any person, firm or corporation to pick up , separated materials for his/her own use, except the owner, lessee or occupant of a residential dwelling may take back materials set out at that particular dwelling.”).

. In concluding that there is no reasonable expectation of privacy in garbage set out for collection, most of these courts focused on Greenwood's outdated characterization of such garbage as "readily accessible” to the public. See, e.g., Rikard v. State, 354 Ark. 345, 123 S.W.3d 114, 119-20 (2003); People v. Hillman, 834 P.2d 1271, 1277-78 (Colo.1992) (concluding that there is not a reasonable expectation of privacy in garbage placed adjacent to the sidewalk, which is "readily accessible” to the public); State v. DeFusco, 224 Conn. 627, 620 A.2d 746, 751-53 (1993) ("When the defendant placed his garbage at the curb in front of his house for collection by the garbage collector, a myriad of intruders, purposeful or errant, could legally have sorted through his garbage.”);. State v. Donato, 135 Idaho 469, 20 P.3d 5, 8-10 (2001) (reasoning that garbage is "knowingly exposed” to the public when set out for collection); State v. Kimberlin, 267 Kan. 659, 984 P.2d 141, 145-46 (1999) (explaining that Kansas does not generally depart from federal court interpretations of the Fourth Amendment, and that Fourth Amendment reasonableness turns on public accessibility to garbage); Commonwealth v. Pratt, 407 Mass. 647, 555 N.E.2d 559, 567-68 (1990) (reasoning that garbage set out for collection is exposed to the public, indicating that the defendant abandoned his privacy interests in the garbage); State v. Schmalz, 744 N.W.2d 734, 741-43 (N.D.2008) (relying on Greenwood’s public exposure discussion to conclude that there is no reasonable expectation of privacy in garbage set out for collection); Barekman v. State, 200 P.3d 802, 809-10 (Wyo.2009) (reasoning that there can be no reasonable expectation of privacy in garbage set out for collection given exposure to the public, animals, and the elements).

. The California, Hawaii, New Hampshire, New Jersey, New Mexico, and Vermont Supreme Courts have all interpreted their state constitutions to require a warrant for searches of garbage set out for collection on the basis that there is a reasonable expectation of privacy in such garbage. See Krivda, 96 Cal.Rptr. 62, 486 P.2d 1262, 1268-69 (Cal.1971) (holding that defendants who set out their garbage for collection had "a reasonable expectation that their trash would not be rummaged through and picked over by police officers acting without a search warrant”); State v. Tanaka, 67 Haw. 658, 701 P.2d 1274, 1276-77 (1985) (cited with approval post-Greenwood by the Supreme Court of Hawai’i in State v. Lopez, 78 Hawai'i 433, 896 P.2d 889, 901 (1995)); State v. Goss, 150 N.H. 46, 834 A.2d 316, 319-20 (2003); State v. Hempele, 120 N.J. 182, 576 A.2d 793, 810, 814 (1990); State v. Crane, 329 P.3d 689, 696 (2014) (adopting the New Mexico Court of Appeals’ holding in State v. Granville, 140 N.M. 345, 142 P.3d 933, 943 (Ct.App.2006), that "[ajllowing the State to conduct a war-rantless search of refuse set out for collection when an individual is required by law to dispose of his refuse in a specific place, time, and manner is inconsistent with the privacy protections provided by Article II, section 10”); State v. Morris, 165 Vt. 111, 680 A.2d 90, 99-100 (1996). The Washington Supreme Court has similarly determined that a warrant is required to search garbage set out for collection,- although the relevant provision of Washington’s constitution focuses on whether the "private affairs” of an individual have been unreasonably violated instead of whether a person's expectation of privacy is reasonable. State v. Boland, 115 Wash.2d 571, 800 P.2d 1112, 1116-17 (1990). Nevertheless, the Washington Supreme Court cited as persua *701 sive the Hawai’i and New Jersey Supreme Courts’ discussions in Tanaka and Hempele of a reasonable expectation of privacy in garbage.

. In Litchfield v. State, the Indiana Supreme Court rejected the defendant’s contention that police seizure of trash set out for collection is per se unreasonable but also concluded that "it is not reasonable for law enforcement to search indiscriminately through people’s trash.” 824 N.E.2d 356, 363 (Ind.2005). The court reasoned that "[ajllowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions.” Id. at 364. Instead, the court determined that "a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop’ of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement.” Id. The Montana Supreme Court has adopted Litchfield's approach of requiring reasonable articulable suspicion for a search of garbage set out for collection, largely on the basis that the abandonment of garbage at the curbside is frequently compelled by government regulations. State v. A Blue in Color, 1993 Chevrolet Pickup, 328 Mont. 10, 116 P.3d 800, 805 (2005). The Alaska Supreme Court has also adopted the reasonable suspicion standard for searches of garbage set out for collection, Beltz v. State, 221 P.3d 328, 337 (Alaska 2009), recognizing that while there is a diminished expectation of privacy in such garbage, "this diminished privacy interest is still entitled to some protection against undue government intrusion," id. at 336.

. Government has a tendency to gather massive amounts of detailed information on citizens. In the 1970s, the U.S. Senate Select Committee known as the Church Committee learned that, for over 20 years, the CIA, with the cooperation of the U.S. Postal Service, illegally opened mail, collecting information on 1.5 million Americans. For 28 years, the NSA intercepted every overseas telegram sent or received by an American citizen. One million Americans without a court conviction had FBI files. Walter F. Móndale, et al., National Security and the Constitution: A Conversation Between Walter F. Móndale and Robert A. Stein, 98 Minn. L. Rev. 2011, 2015-16 (2014). In recent years, government has undertaken extensive programs to collect information on telephone calls, internet communications, financial transactions, and citizens’ locations. Advanced, inexpensive tracking and monitoring devices are now readily available to state and local law enforcement.