*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0428**

State of Minnesota,
Respondent,

vs.

Jesse Andrew Faust,
Appellant.

**Filed April 4, 2016
Affirmed
Peterson, Judge**

St. Louis County District Court
File No. 69HI-CR-13-360

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Karl G. Sundquist, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Robert M. Paule, Robert M. Paule, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

PETERSON, Judge

In this appeal from a conviction of fifth-degree sale of a controlled substance, appellant challenges the district court's denial of his motion to suppress all evidence against him. We affirm.

**FACTS**

An anonymous caller contacted dispatch at the Chisholm Police Department and reported that individuals at 414 Fifth Street Southwest were hauling bags of marijuana out to a vehicle.[1] At 10:22 p.m., Officers William Purdy and Joel Urdahl were dispatched to that address. When the officers arrived at the residence, they saw a black Dodge Ram pickup truck backed up to the house, about 10 to 15 feet from the back wall.

Purdy saw an individual, later identified as appellant Jesse Andrew Faust, come out the back door. As Purdy approached Faust, Faust was standing on the back step holding a cardboard box. When Purdy turned on his flashlight and identified himself as a police officer, Faust stepped off the step and walked away from Purdy around the corner of the house. Faust was out of Purdy's sight for a couple of seconds. When Faust came back around the house, he was not carrying the box.

Purdy asked Faust to identify himself and asked what he was doing at the house. Faust produced his Minnesota driver's license and said that he was picking up some belongings for a friend. Faust stated that T.O. owned the house and that the box contained DVD cords or something similar. Purdy asked Faust to contact T.O., and Faust appeared to make repeated calls on his cell phone. Purdy did not believe that Faust actually made

[1] Appellant argues that the district court incorrectly found that the 911 caller stated that an individual was hauling bags of marijuana to a black pickup truck. The testimony at the hearing on appellant's motion to suppress indicates only that the caller referred to a vehicle. One of the police reports in the district court file states that the caller "stated to dispatch that there was a black truck backed up to the residence," which might explain the district court's finding. Whether the 911 caller said "vehicle" or "black pickup truck" does not affect our analysis.

any calls because, when Faust brought the phone up to his ear, Purdy could see that the screen appeared to be the phone's home screen and not a call screen.

Purdy testified that Faust appeared to be nervous; Faust had to be repeatedly told to keep his hands out of his pockets, and his attention was not on Purdy and seemed to be elsewhere. Faust's eyes were slightly red, and Purdy smelled an odor of unburned marijuana on Faust's person. Purdy suspected that Faust might be committing a burglary at the house. Purdy asked what was in the cardboard box, which was duct-taped shut, and Faust said, "I don't have to show you that." But Faust removed the tape from one corner of the box, reached in, and removed several items, black cords and what appeared to be a rubber hose, from the box.

Purdy asked for T.O.'s phone number, and Faust refused to give it to him. The officers handcuffed Faust and placed him in a squad car. The registration check on the black pickup truck showed that it was owned by a person named Faust, although not Jesse Faust. Purdy shined a flashlight through the truck's window and saw several boxes in the back seat labeled with pictures and descriptions of lights, which Purdy knew from his training and experience were consistent with lights used in marijuana growing operations. Purdy then went over to the cardboard box and shined his flashlight into the corner of the box from which Faust had removed the tape. Without touching the box, Purdy could see rubber hoses and what appeared to be power cords and kitchen timers. From his training and experience, Purdy knew that such items were used to administer water and regulate the timing of light in marijuana growing operations. Purdy went to the back door of the house,

3

which was locked, but he could smell a "very noticeable" odor of unburned marijuana coming from the door.

Purdy obtained a search warrant to search the house, the pickup truck, a car registered to T.O. parked in front of the house, the cardboard box, and Faust's person. Items associated with a marijuana growing operation and four 30-gallon trash bags full of marijuana were seized during the search. Faust was arrested and charged with one count each of fifth-degree possession of a controlled substance and fifth-degree sale of a controlled substance.

Faust moved to suppress all of the evidence against him, arguing that he was initially seized when Purdy approached him and asked for identification, that this initial seizure was illegal, and that it was also illegal to expand the scope of the seizure to include continued interrogation of Faust and the search of the cardboard box. The district court denied appellant's motion. The district court found Faust guilty of both charges against him and refused Faust's request to reconsider the order denying his suppression motion. This appeal followed sentencing.

## DECISION

"When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo." *State v. Eichers,* 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted), *cert. denied*, 135 S. Ct. 1557 (2015).

4

The United States Constitution and the Minnesota Constitution guarantee individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Under the Minnesota Constitution, a person has been seized if in view of all of the circumstances surrounding the incident, a reasonable person would believe that he was neither free to disregard the police questions nor free to terminate the encounter. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995).

A police officer may stop and detain an individual briefly for the purpose of investigation when the officer has a reasonable, articulable suspicion of criminal activity. *State v. Timberlake,* 744 N.W.2d 390, 393 (Minn. 2008). A reasonable-suspicion determination is reviewed de novo. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997). "The reasonable-suspicion standard is not high." *State v. Diede,* 795 N.W.2d 836, 843 (Minn. 2011) (quotation omitted). "The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike,* 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)).

> The information necessary to support an investigative stop need not be based on the officer's personal observations, rather, the police can base an investigative stop on an informant's tip if it has sufficient indicia of reliability. Police generally may not effect a stop on the basis of an anonymous informant's tip unless they have some minimal information suggesting the informant is credible and obtained the information in a reliable way.

*G.M.*, 560 N.W.2d at 691 (citation omitted). An investigative detention may continue "as long as the reasonable suspicion for the detention remains" and the police act reasonably and diligently in conducting their investigation. *State v. Moffatt,* 450 N.W.2d 116, 119 (Minn. 1990).

The anonymous caller's tip was the specific basis for the police to investigate what was occurring at 414 Fifth Street Southwest. When the officers got to the house, they corroborated some of the information provided in the tip. A vehicle, which happened to be a black pickup truck, was backed up to the house, and a person came out of the house carrying a box, which was consistent with the report that something was being hauled out to the vehicle. This corroboration suggested that the anonymous caller was credible and obtained the reported information by personal observation. *See Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980) (stating that reliability of information provided by tipster was enhanced because "due to the [tipster's] reference to the location of [a] squad car and the vehicle in question, the trooper was able to verify that the [tipster] . . . was in close proximity to the subject car"); *see also United States v. Briley*, 726 F.2d 1301, 1306 (8th Cir. 1984) (stating that "[a]n anonymous tip from an informer may serve as a basis for probable cause as long as its reliability is established through corroboration").

Faust's conduct was consistent with the tip that something was being hauled to the vehicle, and, at that point, the tip was sufficiently reliable to provide a reasonable basis for Purdy to stop Faust to ask some questions. The questioning was not the product of mere whim, caprice, or idle curiosity. The questions led to Purdy reasonably asking Faust to contact the homeowner, and Purdy's observations while talking to Faust and while Faust

was making phone calls increased his suspicion and justified further investigation. Each step in the investigation reasonably lead to the next step, and Purdy articulated why he took each additional step. The district court did not err in denying Faust's motion to suppress.

**Affirmed.**