# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-1024

State of Minnesota,
Appellant,

vs.

Catherine Nyree McCabe,
Respondent.

**Filed February 6, 2017**
**Reversed and remanded**
**Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-15-34540

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Zenaida Chico, Assistant City Attorney, Minneapolis, Minnesota (for appellant)

Mary F. Moriarty, Fourth District Public Defender, Laura Heinrich, Assistant Public Defender, Minneapolis, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Jesson, Judge.

## S Y L L A B U S

Minnesota Statutes section 169.48, subdivision 1(a) (2014), requires drivers to display lighted headlamps and lighted tail lamps at any time when it is raining, regardless of visibility.

## O P I N I O N

**SCHELLHAS**, Judge

In this state's pretrial appeal, appellant argues that the district court erred by suppressing evidence obtained after the stop of respondent's vehicle. We reverse and remand.

## FACTS

On December 8, 2015, Minneapolis Police Officers Douglas Lemons and Kyle Ruud were patrolling in their squad car near Penn Avenue. Shortly before 12:30 p.m., while it was raining lightly, the officers observed a Chevrolet van that was being driven without lighted headlamps and lighted tail lamps. They pulled behind the van and briefly followed it. When the van pulled over to the curb, the officers initiated a traffic stop. Respondent Catherine McCabe was the van's driver. During the stop, McCabe informed the officers that a handgun was located in the van's middle console. The officers recovered the handgun, which McCabe admitted belonged to her. McCabe did not have a permit to carry the handgun.

The state charged McCabe with possessing a pistol without a permit in violation of Minnesota Statutes section 624.714, subdivision 1a (2014). McCabe moved the district court to suppress the evidence obtained from the stop, arguing that the officers did not reasonably suspect that she was committing a traffic violation when they stopped her. At the suppression hearing, both officers testified and a video recording of the traffic stop was played. Officer Lemons stated that he stopped the van because he believed its headlamps and tail lamps were not lighted while it was raining and because the driver did not signal

2

her move to the curb. But Officer Lemons admitted that he was wrong about the failure to signal and agreed that the video recording shows that McCabe did signal when she pulled over to the side of the road.

The district court concluded that the officers did not have a reasonable, articulable suspicion that McCabe was violating Minnesota Statutes section 169.48, subdivision 1(a), when the officers stopped her, stating:

> While Minnesota Law mandates that a car display lighted headlamps and tail lamps at any time it is raining, the statute also mandates that lighted headlamps and tail lamps are required at any time visibility is impaired or there is "not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead." Minn. Stat. 169.48(1)(a). Reading the statute as a whole, the intent of the law is to require headlight and taillight illumination when visibility is obscured by a distance of 500 feet ahead. The statute does not define "raining" but the squad video shows that it is very lightly sprinkling but not nearly enough to hinder visibility. . . . Consequently, the Officers did not have an objective reason to stop the vehicle.

The district court suppressed all evidence obtained from the stop, and this state's pretrial appeal follows.

## ISSUE

Did the district court err by concluding that the officers lacked a reasonable, articulable suspicion of illegal activity to justify the traffic stop?

## ANALYSIS

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. An officer may "conduct a limited investigatory stop of a motorist if the state can show that the officer had a

3

particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822–23 (Minn. 2004) (quotation omitted). "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *Id.* at 823. "When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo." *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted).

## A

As a preliminary matter, McCabe raises an issue regarding the standard of review. In a state's pretrial appeal, this court will "reverse the determination of the trial court only if the state demonstrates clearly and unequivocally, first, that the trial court erred in its judgment and, second, that unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Kim*, 398 N.W.2d 544, 547 (Minn. 1987) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn. 1977)).

Although McCabe acknowledges that suppression of the evidence here has a critical impact on the state's case, she maintains that the district court's decision is a mixed question of fact and law and that the "clear and unequivocal error" language used in cases like *Webber* and *Kim* requires us to defer to the district court's legal determinations. But the supreme court held recently that "*Webber* was not intended to, nor did it, announce a rule of deference to district court pretrial legal conclusions that the State has appealed."

*State v. Lugo*, 887 N.W.2d 476, 485 (Minn. 2016). We therefore apply the usual standard of review for suppression rulings: we review the district court's legal conclusions de novo and its fact-findings for clear error. *Eichers*, 853 N.W.2d at 118.

**B**

The state argues that the officers' observation that McCabe was driving in the rain without displaying lighted headlamps and lighted tail lamps provided a legal basis for the traffic stop. The argument requires us to construe Minnesota Statutes section 169.48, subdivision 1(a), which governs when drivers must display lighted headlamps and lighted tail lamps. "Statutory interpretation presents a question of law, which [appellate courts] review de novo." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015). The object of statutory interpretation is to ascertain and effectuate the legislature's intent. Minn. Stat. § 645.16 (2016). When the legislature's intent is clear from the statute's plain language, the statute must be interpreted according to its plain meaning without reference to the canons of statutory construction. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). Words and phrases should be construed according to their common and approved usage. Minn. Stat. § 645.08(1) (2016).

Section 169.48 requires drivers to display lighted headlamps and lighted tail lamps in three circumstances:

> (1) at any time from sunset to sunrise;
> (2) at any time when it is raining, snowing, sleeting, or hailing; and
> (3) at any other time when visibility is impaired by weather, smoke, fog or other conditions or there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead.

5

Minn. Stat. § 169.48, subd. 1(a).

In interpreting the statute, the district court combined the inclement-weather provision (subdivision 1(a)(2)) with the visibility provision (subdivision 1(a)(3)) and concluded that, even when it is raining, a driver need not display lighted headlamps and lighted tail lamps if persons and vehicles are clearly discernible at a distance of 500 feet ahead. The state argues that this interpretation is incorrect and that the visibility provision does not limit the requirement that drivers display lighted headlamps and lighted tail lamps "at any time when it is raining." *Id.*, subd. 1(a)(2). We agree.

The unambiguous language of section 169.48 indicates that the provisions are to be considered independently: "at *any other time* when visibility is impaired by weather, smoke, fog or other conditions or there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead." *Id.*, subd. 1(a)(3) (emphasis added). The phrase "any other time" indicates that the impaired-visibility circumstance need not exist in every instance in order for the mandate that drivers display lighted headlamps and lighted tail lamps to be triggered. Under the plain statutory language, rain is sufficient to trigger the statutory requirement that a driver display lighted headlamps and lighted tail lamps, regardless of the visibility of persons and vehicles on the road. *Id.*, subd. 1(a)(2). The district court's finding that it was not raining "nearly enough to hinder visibility" therefore is irrelevant.

The record shows that the officers had reasonable suspicion to stop McCabe for violating section 169.48, subdivision 1(a)(2). The officers testified that McCabe was

6

driving in the rain without displaying lighted headlamps or lighted tail lamps. Although we cannot discern from the video recording whether the van's headlamps were lighted, the video clearly shows that the van's tail lamps were not lighted, which her attorney conceded at the suppression hearing. The video further shows that it was raining hard enough to induce the officers to activate their squad car's windshield wipers.

McCabe's characterization of the rainfall as "sprinkling" does not persuade us to reach a different conclusion. The statute does not define "raining," but common usage provides that rain is water falling from the sky in drops. *See The American Heritage Dictionary of the English Language* 1493 (3d ed. 1992) (defining "rain" as "[w]ater condensed from atmospheric vapor and falling in drops," and "raining" as "[t]o fall in drops of water from the clouds"). And "sprinkling" is also commonly accepted as a description for light rain. *See id.* at 1745 (defining "sprinkle" as "[t]o fall or rain in small or infrequent drops" and "[a] light rainfall"). "Raining" therefore necessarily includes "sprinkling" for statutory purposes.

We also are unmoved by McCabe's arguments that the state's interpretation of the statute renders it unconstitutionally vague and violates the rule of lenity. First, McCabe forfeited her vagueness challenge by failing to raise it before the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that appellate courts "generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure"). Second, because the statute is unambiguous, the rule of lenity does not apply. *See State v. Nelson*, 842 N.W.2d 433, 443 (Minn. 2014) (stating that the rule of lenity "applies to the interpretation of criminal statutes when 'a grievous

7

ambiguity or uncertainty in the statute' remains after we have considered other canons of statutory construction" (quoting *Dean v. United States*, 556 U.S. 568, 577, 129 S. Ct. 1849, 1856 (2009))).

Because we conclude that drivers are required to display lighted headlamps and lighted tail lamps any time when it is raining, regardless of visibility, and that the officers here had reasonable suspicion to stop McCabe's vehicle, we do not address the state's alternative argument that the stop was justified because the officers made a mistake of law that nevertheless was reasonable. *See Heien v. North Carolina*, 135 S. Ct. 530, 536, 540 (2014) (holding that "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition," and concluding that the officer's interpretation of North Carolina's brake-light statute, while incorrect, was reasonable).

## D E C I S I O N

Because the officers had a reasonable, articulable suspicion that McCabe was violating the law by driving in the rain without displaying lighted headlamps and lighted tail lamps, the district court erred by suppressing the evidence obtained from the traffic stop.

**Reversed and remanded.**