*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1304**

State of Minnesota,
Respondent,

vs.

Chaz Edwin Johnson,
Appellant.

**Filed May 28, 2024**
**Affirmed**
**Segal, Chief Judge**

Dakota County District Court
File No. 19HA-CR-21-904

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Jessica A. Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Mark D. Kelly, Law Offices of Mark D. Kelly, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Segal, Chief Judge; and Reilly, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this direct appeal from the judgment of conviction for fifth-degree drug possession, appellant argues that the district court erred in denying his motion to suppress evidence because law enforcement did not have reasonable, articulable suspicion of a traffic violation or criminal activity sufficient to justify the stop or subsequent search of appellant's vehicle. We affirm.

**FACTS**

In April 2021, respondent State of Minnesota charged appellant Chaz Edwin Johnson with two counts of fifth-degree controlled-substance possession. The charges stemmed from a traffic stop and subsequent search of Johnson's car, during which law enforcement discovered suspected controlled substances. Johnson moved to suppress the evidence obtained as a result of the search, arguing that law enforcement lacked reasonable, articulable suspicion to justify the stop and subsequent search, and therefore any evidence discovered during the search should be suppressed.

The district court held a contested omnibus hearing on the motion. The following summarizes the testimony presented at the hearing. On September 10, 2020, a police officer assigned to the Dakota County Drug Task Force was conducting surveillance at a drug store parking lot in Hastings. The parking lot had been the subject of complaints concerning drug use, drug dealing, and other trafficking activities. While conducting surveillance, the officer observed a car with a single occupant that was parked away from the store by the back of the lot even though there were available parking spaces near the

2

store.  The car's occupant was later identified as Johnson.  The officer's suspicions were raised by the car's isolated location in the parking lot and the fact that Johnson remained inside the car.  Another car then drove up and parked close to Johnson's vehicle.  The officer observed a female driver get out of her car and walk over to speak with Johnson.  During the brief interaction between Johnson and the woman, the officer believed he witnessed Johnson pass something to the woman.  The woman then entered the drug store.

The officer then saw the woman leave the drug store with a shopping bag and enter the passenger side of Johnson's car.  The officer observed that the woman and Johnson both reclined their seatbacks to the point that the officer was unable to see anyone inside the car.  However, "[f]rom time to time . . . a head would pop up . . . turning side to side like they're looking around."  After a few minutes, Johnson and the woman sat up and drove away, leaving the woman's car in the parking lot.  The officer communicated his observations to other law enforcement in the area, and another agent with the drug task force initiated a traffic stop of Johnson's vehicle.

When the officer arrived at the scene of the traffic stop, law enforcement was already conducting a search of Johnson's vehicle.  The agent who conducted the traffic stop informed the officer that, during the stop, Johnson admitted he had a tetrahydrocannabinol (THC) vape cartridge and had handed it to the agent.  As a result, officers conducted a search of the car for additional controlled substances.  During the search, officers found a crystal substance, which tested presumptively positive for methamphetamine.  They also found 45 pills that were later identified as four different types of controlled substances.

Following the omnibus hearing, the district court denied the motion to suppress. Johnson waived his right to a jury trial and agreed to a court trial based on stipulated evidence pursuant to Minn. R. Crim. P. 26.01, subd. 3. The district court found Johnson guilty of one count of fifth-degree controlled-substance crime and sentenced him to 17 months in prison, stayed execution of the sentence, and placed Johnson on probation for three years.

**DECISION**

Johnson challenges the district court's denial of his motion to suppress. He argues that law enforcement lacked reasonable, articulable suspicion sufficient to support the initial traffic stop or subsequent expansion of the stop. We address each in turn. We review de novo a district court's determination of reasonable suspicion of illegal activity. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011).

An investigatory stop of a vehicle is valid if an officer has "specific and articulable facts establishing reasonable suspicion of a motor vehicle violation or criminal activity." *State v. Duesterhoeft*, 311 N.W.2d 866, 867 (Minn. 1981) (quotation omitted). The reasonable suspicion standard is "not high." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (quotation omitted). But an officer's suspicion cannot be based on a hunch; it must be objectively reasonable under the totality of the circumstances. *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021).

Here, the district court relied on the following circumstances as its basis for denying the motion to suppress: (1) the parking lot where the officer conducted surveillance was known for drug use and trafficking; (2) the two vehicles were parked near each other but

4

away from other vehicles and the entrance to the store; (3) Johnson and the woman engaged in a hand-to-hand transaction before the woman entered the store; (4) after the woman exited the store and got in Johnson's vehicle, she and Johnson reclined their seats back—resulting in them being out of view—but occasionally lifted their heads to look around; and (5) the officer had seen similar behavior during past drug transactions.

Johnson argues that there are innocent explanations for his behavior that dispel any suspicion of drug-related criminal activity. But "even lawful activity can serve as the basis for reasonable suspicion." *Id.* at 754. And this court has observed that "innocent explanations, when taken together with the police officers' training and experience, . . . are sufficient to constitute reasonable suspicion." *State v. Hunter*, 857 N.W.2d 537, 544 (Minn. App. 2014). The officer here had extensive experience as a police officer and received specialized training as a member of the drug task force, which included "training on parking lot details and drug transactions." He also testified about specific behaviors that, based on his specialized training and experience, were consistent with drug-related criminal activity. On this record, the totality of the circumstances supports the district court's determination that the officer had reasonable, articulable suspicion of wrongdoing sufficient to support the stop of Johnson's vehicle.

We turn next to Johnson's challenge to the expansion of the traffic stop to include a search of his car. A warrantless search is "presumptively unreasonable unless one of a few specifically established and well-delineated exceptions applies." *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003) (quotation omitted).

The district court determined that the search of Johnson's vehicle was permissible under the automobile exception to the warrant requirement. Under this exception, a police officer may search a vehicle without a warrant if there is "probable cause to believe the search will result in a discovery of evidence or contraband." *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016) (quotation omitted). During the traffic stop, Johnson "admitted to having a THC vape cartridge in his pocket and handed it to [an] officer." The district court determined that, at the point Johnson handed the THC vape cartridge over, "officers had probable cause to believe that a search of the vehicle would result in the discovery of further drugs or evidence of a crime w[ould] be found."

Johnson does not contest the determination that the THC vape cartridge provided officers with probable cause to search his vehicle for controlled substances. Rather, Johnson argues that the vehicle stop was impermissibly expanded "in both scope and duration . . . when [he] was badgered by law enforcement about whether the vehicle contained contraband and was threatened with a vehicle search with or without his consent." He asserts that "[t]he vape pen cartridge was only offered to law enforcement after said impermissible expansion of the initial seizure of a traffic stop." He cites as support *State v. Dezso*, in which the supreme court explained the factors that are considered when determining whether an individual voluntarily consented to surrendering evidence. 512 N.W.2d 877, 880 (Minn. 1994) (noting "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said" are relevant considerations).

We are not persuaded. The record reflects that the purpose of the initial stop was to investigate Johnson for the "use, possession, or sale of drugs." The agent's initial questions

6

about whether there was anything illegal in the car were therefore appropriate because they were "strictly tied to and justified by the circumstances which rendered the initiation of the stop permissible." *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (quotation omitted). The expansion—the search of the vehicle—occurred only after Johnson handed the THC vape cartridge to the agent and provided him with probable cause to search the car.

Johnson also appears to argue on appeal that he did not voluntarily hand over the THC vape cartridge, but rather only did so because he felt compelled by law enforcement's unconstitutional questioning of him. We conclude, however, that Johnson failed to assert this argument in his motion to the district court and that it was therefore forfeited. *State v. McCabe*, 890 N.W.2d 173, 177 (Minn. App. 2017), *rev. denied* (Minn. Apr. 26, 2017). Johnson's memorandum submitted to the district court in support of his motion to suppress states that, during the traffic stop, Johnson "offered law enforcement a vape with THC oil." And although Johnson offered testimony suggesting that he was overwhelmed by law enforcement's questioning, that testimony was not referenced in his memorandum, which was submitted following the hearing. Johnson did not cite to *Dezso* or otherwise raise the issue of his consent to handing over the THC vape cartridge. Rather, he generally argued only that the "search was not supported by a reasonable, articulable suspicion of criminal activity beyond the original purpose of the stop." And because he did not raise the issue, the district court did not make detailed findings about the nature of the encounter and questioning that resulted in Johnson handing over the THC vape cartridge, and it did not address the legal argument now raised. Because the issue was not raised at the district

court, we decline to address it for the first time on appeal.  *See State v. Ali*, 895 N.W.2d 237, 246 (Minn. 2017) (declining to address a constitutional issue raised for the first time on appeal).

**Affirmed.**