STATE of Minnesota, Respondent,

v.

Mahdi Hassan ALI, Appellant.

A16-0553

Supreme Court of Minnesota.

Filed: May 17, 2017

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Marsha Levick, Juvenile Law Center, Philadelphia, Pennsylvania; and Perry L. Moriearty, University of Minnesota Law School, Minneapolis, Minnesota, for amicus curiae Juvenile Law Center.

## OPINION

HUDSON, Justice.

Appellant Mahdi Hassan Ali ("Mahdi")[1] shot and killed three men during a robbery of the Seward Market when he was 16 years old.[2] Following a jury trial, he was convicted of three counts of murder that we affirmed on appeal. *State v. Ali,* 855 N.W.2d 235, 240 (Minn. 2014). He now challenges the district court's imposition of three consecutive sentences of life imprisonment with the possibility of release after 30 years on each sentence. According to Mahdi, the rule announced in *Miller v. Alabama,* 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and later clarified in *Montgomery v. Louisiana,* — U.S. —, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), should be extended to his case because his three consecutive sentences are, in the aggregate, the "functional equivalent" of life imprisonment without the possibility of release (LWOR). He also argues, for the first time, that his consecutive sentences violate his right to equal protection under the United States Constitution and the Minnesota Constitution. Finally, Mahdi argues that the district court abused its discretion when it sentenced him to three consecutive sentences because the sentences unfairly exaggerate the criminality of his conduct.

Because *Miller* and *Montgomery* involved the imposition of a single sentence of life imprisonment without the possibility of parole and the United States Supreme Court has not squarely addressed the issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment to the United States Constitution, we decline to extend the *Miller/Montgomery* rule to include Mahdi and other similarly situated juvenile offenders. Mahdi also forfeited his equal protection claim when he failed to raise the claim in the district court. In addition, our review of sentences received by other juvenile offenders who were convicted of murdering multiple victims indicates that Mahdi's three consecutive sentences do not unfairly exaggerate the criminality of his conduct. For these reasons, we affirm.

I.

Appellant Mahdi Hassan Ali was charged with the shooting deaths of three men during a robbery of the Seward Market in Minneapolis on January 6, 2010. *Ali,* 855 N.W.2d at 240. The State alleged the following events occurred. When Mahdi entered the Seward Market, Osman Elmi, an employee of the store, and Mohamed Warfa, a relative of Elmi's, were sitting behind the store's counter. *Id.* Mahdi thrust a gun into Elmi's face and pulled Warfa to the ground. *Id.* When Anwar Mohammed, a store customer, walked through the front door, Mahdi shot him two times, including once in the head. *Id.* at 240-41. Mahdi's accomplice yelled in Somali, "Don't Kill" or "No Killing!" *Id.* at 241. After shooting Mohammed, Mahdi ran out of the store. *Id.* Shortly after, Mahdi returned and shot Warfa at least twice. *Id.* As Warfa's body fell, it held open the front door of the store. *Id.* Mahdi's accomplice jumped over Warfa and ran out the door of

---

1. We referred to appellant by his first name in his previous appeal, *State v. Ali,* 855 N.W.2d 235, 240 n.1 (Minn. 2014), because several of the men involved in the case had the last name Ali. To avoid confusion, we do the same here.

2. Before his trial, Mahdi claimed he was 15 years old at the time of the murders. After a 3-day age-determination hearing, however, the district court found that the evidence established that Mahdi was at least 16 years old when the murders were committed. *State v. Ali,* 855 N.W.2d 235, 243 (Minn. 2014).

the store. *Id.* Mahdi chased Elmi through the store. *Id.* A rack of snacks tipped over and spilled as the two men raced around a corner, before Mahdi shot Elmi three times in the back. *Id.* The store's surveillance camera captured footage of the shootings. *Id.* Mahdi later told his cousin that he shot the three men because "they knew," meaning they knew who he was. *Id.* at 243.

In September 2011, a jury found Mahdi guilty of three counts of first-degree felony murder while committing or attempting to commit aggravated robbery, one count of first-degree premeditated murder, and two counts of second-degree murder. *Id.* In October 2011, the district court sentenced him to two consecutive sentences of life with the possibility of release after 30 years for the felony murders of Mohammed and Warfa (Counts I and II), and a mandatory LWOR sentence for the first-degree premeditated murder of Elmi (Count III). *Id.* Mahdi filed a direct appeal, which we stayed to allow postconviction proceedings to proceed. *Id.* at 244. After the postconviction court denied Mahdi's request for relief, we consolidated his direct and postconviction appeals. *Id.*

In the consolidated appeal, we agreed that the *mandatory* sentence of LWOR was unconstitutional under *Miller*, 567 U.S. at 465, 132 S.Ct. 2455, but we rejected Mahdi's argument that the district court's discretionary imposition of two consecutive sentences of life imprisonment with the possibility of release after 30 years for Counts I and II violated *Miller*. *Ali*, 855 N.W.2d at 256-58. We also rejected Mahdi's argument that the two consecutive sentences violated Article I, Section 5 of the Minnesota Constitution, which prohibits "cruel or unusual punishments." *Ali*,

855 N.W.2d at 258. We explained that the two consecutive sentences were not "cruel" under Article I, Section 5, because the sentences were not "disproportionate considering the gravity of the offenses the jury found that he committed." *Ali*, 855 N.W.2d at 259. We further explained that the two consecutive sentences were not "unusual" when compared to other offenders convicted of the same or similar offenses both inside and outside of Minnesota. *Id.* Ultimately, we affirmed the two consecutive sentences of life imprisonment with the possibility of release after 30 years (Counts I and II), but reversed the LWOR sentence (Count III) and remanded to the district court for resentencing on Count III, following a *Miller* hearing. *Id.* at 256, 258.

On remand, the State argued there was no need to hold a *Miller* hearing because the State had decided not to seek a LWOR sentence on Count III. Instead, the State "stipulated" [3] that the district court could impose a third consecutive sentence of life imprisonment with the possibility of release after 30 years. In explaining the State's position at the resentencing hearing, the prosecutor said, "[G]iven that the Minnesota Supreme Court affirmed the consecutive imposition of essentially the three life terms, [Mahdi] will be over 100 years old before he is eligible for parole, and [the State] felt that judicial economy would be best served by foregoing a *Miller* hearing in this particular case." The State also argued that the district court had previously received sufficient evidence about Mahdi's past to decide whether a third consecutive sentence of life imprisonment with the possibility of release after 30 years was appropriate.

---

**3.** At the resentencing hearing, Mahdi's counsel denied having agreed to the State's "stipulation" and asked to preserve his arguments regarding resentencing and the request for a *Miller* hearing for appeal.

Mahdi argued that despite the State's decision not to seek a LWOR sentence, the Eighth Amendment still required a *Miller* hearing because the imposition of three consecutive sentences of life imprisonment with the possibility of release after 30 years on each sentence (i.e., 90 years total) was the "functional equivalent" of a LWOR sentence. He also argued that a *Miller* hearing could not be held in his case without violating the separation of powers doctrine because the Legislature has not provided a framework for *Miller* hearings. Ultimately, Mahdi asked the district court to impose three *concurrent* sentences of life imprisonment with the possibility of release after a total of 30 years.

The district court determined that Mahdi's argument regarding the necessity of a *Miller* hearing was "moot" because the State had agreed to a third sentence of life imprisonment with the possibility of release after 30 years to be served consecutively to the sentences on Counts I and II. The district court also concluded that the imposition of consecutive sentences, even if they could be considered the functional equivalent of a sentence of LWOR, was not the same as a mandatory LWOR sentence imposed for a single offense.

As for Mahdi's motion for the imposition of concurrent sentences, the district court reasoned that it was bound by our previous decision in *Ali*, 855 N.W.2d at 235, which affirmed the two consecutive sentences of life imprisonment with the possibility of release after 30 years. The district court went on to state that "[e]ven if [it] had the discretion to impose concurrent sentences, it would not." It reasoned that "[t]he criteria listed ... at the original sentencing hearing [were] still valid," and that "[t]his was still a brutal, inexcusable murder of three innocent members of the community." According to the district court, "[a] plethora of information regard-ing Defendant's youthful age, personal background, and unique circumstances was presented to [the district] court prior to and during trial. All of this information was carefully considered in sentencing Counts I and II." On January 6, 2016, the district court imposed a third sentence of life imprisonment with the possibility of release after 30 years, to be served consecutively with the sentences on the two other murder counts.

On January 25, 2016, the United States Supreme Court decided *Montgomery*, —— U.S. ——, 136 S.Ct. at 718. The Court clarified that *Miller* barred "life without parole ... for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, —— U.S. ——, 136 S.Ct. at 734.

On April 5, 2016, Mahdi appealed from the district court's January 6 sentencing order, asserting three arguments. First, he argues that the rule announced in *Miller*, and later clarified in *Montgomery*, should be extended to his case because his three consecutive sentences are, in the aggregate, the "functional equivalent" of LWOR. Second, he argues, for what he acknowledges is the first time on this appeal, that his consecutive sentences violate his right to equal protection under the Minnesota Constitution. Third, he argues that the district court abused its discretion in sentencing him to consecutive sentences because the resulting aggregate sentence unfairly "exaggerates the criminality" of his conduct. We consider each argument in turn.

## II.

■ We first address Mahdi's argument that we should extend the rule announced in *Miller*, and later clarified in *Montgomery*, to his case because his three consecutive sentences are, in the aggregate, the "functional equivalent" of LWOR. Mahdi

contends that *Montgomery* made clear that "absent proof of permanent incorrigibility, a sentence violates the Eighth Amendment if it deprives a juvenile of a realistic possibility of release during the juvenile's natural life expectancy."[4] He also observes that *Miller* "did not carve out any exception for aggregate sentencing." Thus, according to Mahdi, the reasoning underlying the *Miller/Montgomery* rule applies with equal force when a district court imposes consecutive sentences of life imprisonment with the possibility of release that are, in the aggregate, the functional equivalent of a LWOR sentence.

The State contends,[5] in part, that Mahdi's argument is fundamentally flawed because it fails to acknowledge that consecutive sentences must be viewed separately under the Eighth Amendment. The State relies on *O'Neil v. Vermont*, in which the United States Supreme Court was asked to rule on whether consecutive sentences for 307 liquor-law infractions violated the Eighth Amendment's prohibition against cruel and unusual punishment. 144 U.S. 323, 330-31, 12 S.Ct. 693, 36 L.Ed. 450 (1892). Although the Court ultimately concluded that it lacked jurisdiction to decide the question, *id.* at 334-35, 12 S.Ct. 693, it quoted the reasoning of the underlying state supreme court:

> It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary, on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life. The mere fact that cumulative punishments may be imposed for distinct offences in the same prosecution is not material upon this question. *If the penalty were unreasonably severe for a single offence, the constitutional question might be urged; but here the unreasonableness is only in the number of offences which the respondent has committed.*

*Id.* at 331, 12 S.Ct. 693 (emphasis added) (quoting *State v. O'Neil*, 58 Vt. 140, 2 A. 586, 593 (1886)).

The State acknowledges that the above-quoted language from the United States Supreme Court's opinion is dictum. Nevertheless, it contends that we should follow the dictum of *O'Neil* because it is well reasoned, as evidenced by the many federal and state courts that have accepted its logic. *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) ("[I]t is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."); *Hawkins v. Hargett*, 200 F.3d 1279, 1285 n.5 (10th Cir. 1999)

---

**4.** Mahdi also asserts that *Montgomery* "dictates that [his] aggregate sentence be found to be cruel or ... unusual under the state constitution." He, however, fails to articulate how *Montgomery* impacts our previous holding in *Ali*, 855 N.W.2d at 259, that Mahdi's consecutive sentences were neither cruel nor unusual under Article I, Section 5 of the Minnesota Constitution. As discussed in more detail below, the Court's decision in *Montgomery* interpreted the Eighth Amendment in a case involving a single sentence of life imprisonment without the possibility of parole and the Court's decision in *O'Neil v. Vermont*, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450

(1892), suggests that consecutive sentences should be treated separately for Eighth Amendment purposes. We, therefore, conclude that *Montgomery* does not dictate that Mahdi's three consecutive sentences are cruel or unusual under Article I, Section 5.

**5.** On October 26, 2016, the State moved to file a substitute brief under Minn. R. Civ. App. P. 127 to correct several typographical errors in its brief filed August 29, 2016. Mahdi did not oppose the motion. We grant the State's motion.

(explaining that the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence"); *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988) (same); *State v. Berger*, 212 Ariz. 473, 134 P.3d 378, 380, 384 (2006) (affirming a 200-year sentence for multiple acts of child pornography because "[a] defendant has no constitutional right to concurrent sentences for two separate crimes" (quoting *State v. Jonas*, 164 Ariz. 242, 792 P.2d 705, 712 (1990))); *State v. Hairston*, 118 Ohio St.3d 289, 888 N.E.2d 1073, 1077-79 (2008) (analyzing each sentence for each crime separately and rejecting the argument that an aggregate prison term of 134 years for multiple crimes violated the Eighth Amendment); *State v. Buchhold*, 727 N.W.2d 816, 823-26 (S.D. 2007) (holding that consecutive sentences for 11 sexual assault counts that amounted to a "de facto" life sentence of 175 years in prison did not violate the Eighth Amendment). According to the State, "[a]ll of these cases stand for the unremarkable proposition that it is constitutionally permissible to punish a person who commits two, three, four or even more crimes (including murder) more severely than a person who commits a single crime." *See Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) ("Recidivism has long been recognized as a legitimate basis for increased punishment.").

■ Whether a criminal sentence violates the Eighth Amendment is a question of law that we review de novo. *State v. Gutierrez*, 667 N.W.2d 426, 438 (Minn. 2003). The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The United States Supreme Court has recognized that, for the most part, its Eighth Amendment "precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We have said that "[t]he concept of proportionality is central to the Eighth Amendment." *State v. Juarez*, 837 N.W.2d 473, 480 (Minn. 2013) (quoting *Graham*, 560 U.S. at 59, 130 S.Ct. 2011).

In recent years, the United States Supreme Court has decided a line of cases acknowledging that fundamental differences between juveniles and adults affect the proportionality analysis under the Eighth Amendment, and therefore most juveniles are categorically less deserving of the harshest punishments. However, none of these cases have involved challenges to consecutive sentences.

For example, in *Roper v. Simmons*, a defendant was convicted of and sentenced to death for a single murder committed when he was 17 years old. 543 U.S. 551, 557, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). After outlining three general ways in which juvenile offenders differ from their adult counterparts, the Court adopted a categorical ban on *death sentences* for juveniles. *Id.* at 568-71, 578, 125 S.Ct. 1183. Five years later, in *Graham*, a defendant was sentenced to life imprisonment without the possibility of parole for an armed burglary committed when the defendant was 16 years old. 560 U.S. at 53, 57, 130 S.Ct. 2011. Reaffirming *Roper*, the Court held that a juvenile "may not be sentenced to *life without parole* for a nonhomicide crime." *Id.* at 74-75, 130 S.Ct. 2011 (emphasis added).

More recently, in *Miller*, the Court considered an Eighth Amendment challenge in a consolidated appeal involving two 14-year-old offenders. 567 U.S. at 465, 132 S.Ct. 2455. Both defendants received mandatory sentences of life imprisonment without the possibility of parole based on their single-murder convictions. *Id.* at 465-

69, 132 S.Ct. 2455. The Court ultimately held that the mandatory imposition of life imprisonment without the possibility of parole on a juvenile homicide offender violates the Eighth Amendment. *Id.* at 479, 132 S.Ct. 2455. The Court stated that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489, 132 S.Ct. 2455.

Finally, in *Montgomery*, the Court considered an Eighth Amendment challenge to a mandatory sentence of life imprisonment without the possibility of parole that was imposed nearly 50 years before the Court decided *Miller*. *Montgomery*, —— U.S. at ——, 136 S.Ct. at 726. The defendant in *Montgomery* was also convicted of a single murder. *Id.* at ——, 136 S.Ct. at 725. The Court clarified that *Miller* "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Id.* at ——, 136 S.Ct. at 734 (quoting *Miller*, 567 U.S. at 472, 132 S.Ct. 2455). The Court stated that, "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment *for a child whose crime reflects 'unfortunate yet transient immaturity.'"* *Id.* at ——, 136 S.Ct. at 734 (quoting *Miller*, 567 U.S. at 479-80, 132 S.Ct. 2455). According to *Montgomery*, *Miller* determined that life imprisonment without the possibility of parole is unconstitutional for all children except for "the rare juvenile offender whose crime reflects irreparable corruption" or "permanent incorrigibility." *Id.* at ——, 136 S.Ct. at 734 (quoting *Miller*, 567 U.S. at 479-80, 132 S.Ct. 2455). Therefore, the Court held that *Miller* applied retroactively to juvenile homicide offenders whose convictions were final when *Miller* was decided because

*Miller* created a new substantive constitutional rule that sentencing a juvenile homicide offender to life imprisonment without the possibility of parole was excessive under the Eighth Amendment for all but "the rare juvenile offender whose crime reflects irreparable corruption." *Montgomery*, —— U.S. at ——, 136 S.Ct. at 734 (quoting *Miller*, 567 U.S. at 479-80, 132 S.Ct. 2455).

Because *Roper*, *Graham*, *Miller*, and *Montgomery* did not involve challenges to consecutive sentences, the Court has not squarely addressed the issue presented in this case: whether the *Miller/Montgomery* rule should be extended to cases in which a juvenile homicide offender receives consecutive sentences of life imprisonment with the possibility of release that the juvenile contends are, in the aggregate, the "functional equivalent" of LWOR. In addition, the Court has not revisited the more general issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment.

A number of other courts have, however, addressed Eighth Amendment challenges that were based on arguments of functional equivalency. These cases can be divided into two general categories: cases involving a lengthy term-of-years sentence imposed for a single crime, *see, e.g., State v. Ragland*, 836 N.W.2d 107, 119-22 (Iowa 2013) (involving a commuted life sentence with no possibility of parole for 60 years imposed for a single murder committed by a juvenile), and cases involving a series of consecutive sentences for multiple crimes, *see, e.g., Hawkins*, 200 F.3d at 1280 (addressing consecutive sentences totaling 100 years for a juvenile who was convicted of multiple offenses, including home burglary, forcible sodomy, rape, and robbery with a dangerous weapon). Mahdi's case falls within the second category.

In the second category of cases, every state supreme court and federal circuit court that has acknowledged the Court's dictum in *O'Neil* has rejected an Eighth Amendment challenge to consecutive sentences.[6] *See, e.g., Hawkins*, 200 F.3d at 1285 & n.5 (affirming the juvenile's consecutive sentences, which totaled 100 years, explaining that the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes"); *Aiello*, 864 F.2d at 265 (affirming the defendant's consecutive sentences, which totaled 140 years, based on the dictum in *O'Neil*); *Close v. People*, 48 P.3d 528, 528, 538-40 (Colo. 2002) (affirming the juvenile's consecutive sentences, which totaled 60 years, after discussing the dictum in *O'Neil*); *Hairston*, 888 N.E.2d at 1078 (affirming the defendant's consecutive sentences, which totaled 134 years, after explaining that under the Eighth Amendment, "proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively"); *Buchhold*, 727 N.W.2d at 823-26 (affirming the defendant's consecutive sentences, which totaled 175 years, after discussing the dictum in *O'Neil* and the numerous courts that had accepted its logic); *cf. Pearson*, 237 F.3d at 886 (affirming the defendant's consecutive prison-discipline sanctions after discussing the dictum in *O'Neil*).

In contrast, when courts have failed to acknowledge the Court's dictum in *O'Neil*, they have split on the issue of whether the *Miller/Montgomery* rule applies to consecutive sentences that are, in the aggregate, the "functional equivalent" of a life impris-

onment without the possibility of parole sentence. *Compare Starks v. Easterling*, 659 Fed.Appx. 277, 280-81 (6th Cir. 2016) (unpublished) (affirming an aggregate sentence of 62 years in prison before any possibility of release because "the Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life" and "it is not our role to predict future outcomes"), *and Hobbs v. Turner*, 2014 Ark. 19, 431 S.W.3d 283, 285, 289 (2014) (holding that an aggregate term of 55 years in prison was constitutional under *Miller* because *Miller* applies to only mandatory sentences of life imprisonment without the possibility of parole), *with McKinley v. Butler*, 809 F.3d 908, 909-11 (7th Cir. 2016) (extending *Miller* to two consecutive 50-year terms the juvenile offender received for convictions that involved the murder of one victim), *State v. Zuber*, 227 N.J. 422, 152 A.3d 197, 203, 215 (2017) (extending *Miller* to consecutive sentences that were, in the aggregate, the functional equivalent of life imprisonment without the possibility of parole when neither defendant would be eligible for parole for at least 55 years), *and Bear Cloud v. State*, 334 P.3d 132, 136, 141-42 (Wyo. 2014) (concluding that the imposition of a life sentence with the possibility of parole after 25 years for a single felony murder conviction to be served consecutively with a sentence of 20-25 years for a burglary conviction implicated *Miller* because the juvenile offender would not be eligible for parole until he was 61 years old).

We acknowledge that, as the United States Supreme Court has explained, fun-

---

**6.** The dissent contends that in the absence of any opinion by a state supreme court or federal circuit court discussing the interplay between *O'Neil* and *Montgomery*, we should extend *Montgomery* to consecutive sentences. We decline to do so because the discussion

from *O'Neil* is the only explanation from the United States Supreme Court we have on the interplay between the Eighth Amendment and consecutive sentences. In light of *O'Neil* and the lack of authority from other courts, we take a cautious approach today.

damental differences between juveniles and adults affect the proportionality analysis under the Eighth Amendment. But the Court has not held that the *Miller/Montgomery* rule applies to sentences other than life imprisonment without the possibility of parole. Moreover, the Court has not squarely addressed the issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment because the Court's discussion of the issue in *O'Neil* was dictum.[7] Admittedly, we have elected to follow well-reasoned Supreme Court dictum in the past. *See, e.g., State v. Craig,* 826 N.W.2d 789, 793 (Minn. 2013). But here, we simply hold that absent further guidance from the Court, we will not extend the *Miller/Montgomery* rule to include Mahdi and other similarly situated juvenile offenders who are being sentenced for multiple crimes, especially when the Court has not held that the *Miller/Montgomery* rule applies to sentences other than life imprisonment without the possibility of parole and the issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment remains an open question.[8]

### III.

■ We next address Mahdi's equal protection argument. For the first time on appeal, as Mahdi himself acknowledges, he contends that the district court denied him equal protection under the United States Constitution and the Minnesota Constitution. According to Mahdi, the court sentenced him to the functional equivalent of a LWOR sentence without holding a *Miller* hearing, thus treating him differently from the petitioners in *Miller,* even though they were similarly-situated juvenile offenders. In response, the State emphasizes that Mahdi's equal protection claim should not be considered for the first time on appeal. We agree with the State.

We have repeatedly stated that "[t]he law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal." *State v. Moore,* 846 N.W.2d 83, 87 (Minn. 2014) (quoting *State v. Engholm,* 290 N.W.2d 780, 784 (Minn. 1980)). Given this clear rule, we do not reach the merits of this issue and consider it to be forfeited.

### IV.

■ Mahdi's last contention is that, even if the three consecutive sentences are constitutional, the district court abused its discretion on remand because sentencing Mahdi, a juvenile, to a lengthy aggregate sentence based on multiple victims unfairly exaggerates the criminality of his conduct. Mahdi argues that he is less culpable because his actions were the result of his youth and its attendant characteristics.

---

7. The dissent contends that the dictum in *O'Neil* "runs headlong into the essence of *Miller* and *Montgomery*." We disagree. *O'Neil* addresses the scope of a court's proportionality review, explaining that consecutive sentences should be considered separately, whereas *Miller* and *Montgomery* address the nature of a court's proportionality review in cases involving juvenile offenders, explaining that the review must include a consideration of whether the juvenile's crime reflected unfortunate yet transient immaturity. Because *O'Neil* addresses a separate and distinct Eighth Amendment question, it does not "run headlong into the essence of *Miller* and *Montgomery*."

8. Accordingly, we also note that *Montgomery* does not impact our holding in *State v. Williams,* 862 N.W.2d 701, 703-04 (Minn. 2015) (declining to extend *Miller* to a district court's discretionary imposition of consecutive sentences resulting in an aggregate sentence of at least 74 years in prison).

We review a district court's decision to impose consecutive sentences for an abuse of discretion. *State v. McLaughlin*, 725 N.W.2d 703, 715 (Minn. 2007). "Although the abuse of discretion standard is exacting, it is not a limitless grant of power to the trial court." *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999). We will interfere with the district court's sentencing discretion only when "the sentence is disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct." *McLaughlin*, 725 N.W.2d at 715 (quoting *State v. Sanchez-Diaz*, 683 N.W.2d 824, 837 (Minn. 2004)) (internal quotation marks omitted). And we "look to past sentences received by other offenders in determining whether the district court abused its discretion." *State v. Fardan*, 773 N.W.2d 303, 322 (Minn. 2009).

As we discussed in his previous case before this court, Mahdi's sentences are similar to those received by other juvenile offenders convicted of multiple murders. *Ali*, 855 N.W.2d at 259-60; *see McLaughlin*, 725 N.W.2d at 715-16 (upholding the imposition of two consecutive life sentences for an offender who killed two of his classmates when he was 15 years old, and noting that "youth" was a factor in numerous cases in which we had upheld comparable sentences, especially those involving "particularly callous murders"); *State v. Ouk*, 516 N.W.2d 180, 184, 186 (Minn. 1994) (holding that the district court did not abuse its discretion in imposing two life sentences for a juvenile offender's two first-degree murder convictions and two 180-month sentences for his two attempted first-degree murder convictions, all sentences served consecutively); *State v. Brom*, 463 N.W.2d 758, 765 (Minn. 1990) (holding that the district court did not abuse its discretion in sentencing a juvenile defendant to three consecutive life sentences and one concurrent life sentence for four first-degree murder convictions). Based on our review of the sentences received by other juvenile offenders who were convicted of murdering multiple victims, we conclude that the three consecutive sentences are not disproportionate to Mahdi's offenses and do not unfairly exaggerate the criminality of his conduct.

To the extent that Mahdi is arguing that the district court abused its discretion when it resentenced him by not providing an opportunity for Mahdi's counsel to advocate, with expert testimony, how Mahdi's youth should lessen his culpability, Mahdi is essentially claiming that the district court abused its discretion by failing to hold a *Miller* hearing before imposing a third consecutive life sentence. Because we hold that *Miller* and *Montgomery* do not apply here, this argument is without merit.[9]

Moreover, in the district court's resentencing order, the district court noted that it had considered "[a] plethora of information regarding [Mahdi's] youthful age, personal background, and unique circumstances" at the first sentencing hearing. At the resentencing hearing, the court also offered both parties opportunities to speak, and Mahdi's counsel did not request to provide additional witness testimony or evidence.

9. In Mahdi's reply brief, he argues for the first time that the district court's failure to hold a *Miller* hearing is a structural error that "necessitates vacating the sentence." Under the Minnesota Rules of Civil Appellate Procedure, the reply brief is confined to new matter raised in the brief of the respondent. Minn. R. Civ. App. P. 128.02, subd. 3. Because the State did not raise this matter in its brief, it was not a proper subject matter for Mahdi's reply brief. "[W]e have declined to consider issues raised for the first time in a reply brief, particularly when the theory was not raised at the district court level." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010).

Accordingly, we conclude that the district court did not abuse its discretion on remand when it imposed a third consecutive life sentence with the possibility of release after 30 years because the sentences that Mahdi received did not unfairly exaggerate the criminality of his conduct in this triple homicide case.

For the foregoing reasons, we affirm the district court's sentencing decision.

## DISSENT

CHUTICH, Justice (dissenting).

Children are "constitutionally different from adults in their level of culpability." *Montgomery v. Louisiana*, —— U.S. ——, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016). This principle is firmly established by a line of decisions of the United States Supreme Court beginning with *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and culminating in a substantive rule announced in *Montgomery*: courts must not sentence juveniles to life imprisonment without the possibility of parole unless they are "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, —— U.S. ——, 136 S.Ct. at 734. The majority is unwilling to extend this substantive rule to juvenile offenders like Mahdi Ali,[1] who, with consecutive life sentences that do not allow for release for 90 years, has received the functional equivalent of life imprisonment without the possibility of release. The majority correctly notes that the United States Supreme Court has never explicitly applied this rule to juvenile offenders whose convictions do not involve a sentence of life imprisonment without the possibility of parole. But because the force and logic behind the principle that

children are "constitutionally different from adults in their level of culpability" undoubtedly encompass cases in which a juvenile defendant commits multiple offenses during a single criminal episode, as happened here, I respectfully dissent.

As the majority recognizes, the United States Supreme Court has decided a line of cases establishing that children are "constitutionally different from adults in their level of culpability" and are thus "less deserving of the most severe punishments." *Montgomery*, —— U.S. ——, 136 S.Ct. at 736; *see Miller v. Alabama*, 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *Roper*, 543 U.S. at 569, 125 S.Ct. 1183. Careful analysis of these cases leads me to conclude that the principles established in them apply with equal strength to a sentence that is the practical equivalent of life imprisonment without the possibility of release.

In *Roper*, the Supreme Court adopted a categorical ban on death sentences for juveniles. 543 U.S. at 578, 125 S.Ct. 1183. Relying on research in adolescent development, the Court discussed three differences between juveniles and adults demonstrating that juvenile offenders are less culpable than adult offenders. *Id.* at 569-70, 125 S.Ct. 1183. First, juveniles have a "lack of maturity and an underdeveloped sense of responsibility" that "often result in impetuous and ill-considered actions and decisions." *Id.* at 569, 125 S.Ct. 1183 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993)). Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure" and "have less control ... over their own

---

1. To be consistent with the majority opinion, my dissent will also refer to Mahdi Ali by his first name.

environment." *Id.* Third, a juvenile's character "is not as well formed as that of an adult"—personality traits of juveniles are "less fixed" and their actions are less likely to be "evidence of irretrievably depraved character." *Id.* at 570, 125 S.Ct. 1183.

Based on these differences, the Court determined that a juvenile offender's "irresponsible conduct is not as morally reprehensible as that of an adult" and that "a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 570, 125 S.Ct. 1183 (quoting *Thompson v. Oklahoma,* 487 U.S. 815, 835, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988)) (internal quotation marks omitted). I note that this categorical ban on sentencing juveniles to death applies no matter whether the juvenile has murdered one person or three.

In *Graham,* the Court reaffirmed *Roper* and banned life imprisonment without the possibility of parole for juvenile nonhomicide offenders. 560 U.S. at 68, 74, 130 S.Ct. 2011. According to the Court, "life without parole is 'the second most severe penalty permitted by law,'" *id.* at 69, 130 S.Ct. 2011 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)), and "an especially harsh punishment for a juvenile," *id.* at 70, 130 S.Ct. 2011. The Court discussed the important penological justifications for sentencing, including retribution, deterrence, incapacitation, and rehabilitation. *Id.* at 71-75, 130 S.Ct. 2011. It concluded that none of these theories adequately justifies life imprisonment without the possibility of parole for juvenile nonhomicide offenders. *Id.* at 74, 130 S.Ct. 2011.

The Court explained that retribution cannot support the imposition of the second most severe penalty on juvenile nonhomicide offenders because they are less culpable than adults. *Id.* at 71-72, 130 S.Ct.

2011. Deterrence does not justify the sentence either, the Court reasoned, because juveniles are "less likely to take a possible punishment into consideration when making decisions." *Id.* at 72, 130 S.Ct. 2011. Incapacitation is also an insufficient justification because, even though the offender poses immediate risks to society, "it does not follow that he would be a risk to society for the rest of his life." *Id.* at 72-73, 130 S.Ct. 2011. Emphasizing that rehabilitation is "a penological goal that forms the basis of parole systems," *id.* at 73, 130 S.Ct. 2011, the Court further stated: "By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society.... [That] is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability," *id.* at 74, 130 S.Ct. 2011. Finally, the Court stressed that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," but it must give those defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75, 130 S.Ct. 2011.

Two years after *Graham* was decided, the Court struck down mandatory sentences of life imprisonment without the possibility of parole as excessive for juvenile offenders, even for those who have committed murder. *Miller,* 567 U.S. at 489, 132 S.Ct. 2455. The Court required that a judge or jury "consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.*

*Miller,* a consolidated case, involved two boys who committed murder when they were 14 years old and were then sentenced to mandatory life imprisonment without the possibility of parole. *Id.* at 465, 132 S.Ct. 2455. The Court acknowledged that "*Roper* and *Graham* establish that chil-

dren are constitutionally different from adults for purposes of sentencing" and "that the distinctive attributes of ˙youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 U.S. at: 471-72, 132 S.Ct. 2455. The Court determined that the mandatory imposition of life imprisonment without the possibility of parole on juvenile offenders "prohibit[s] a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender," which "contravenes *Graham*'s (and also· *Roper*'s) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Miller*, 567 U.S. at 474, 132 S.Ct. 2455.

According to the Court, before sentencing a juvenile to life imprisonment without the possibility of parole, a sentencer is required to provide a hearing where the sentencer "take[s] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 489, 132 S.Ct. 2455. Citing *Roper* and *Graham*, the Court noted that the "harshest possible penalty will be uncommon" because of how difficult it is to conclude at an early age that a juvenile is irreparably corrupt. *Miller*, 567 U.S. at 479-80, 132 S.Ct. 2455.

Most recently, in *Montgomery*, decided *after* the district court resentenced Mahdi following his previous appeal, the Court announced that its· holding in *Miller* is a substantive ban on life imprisonment without the possibility of parole for all juvenile

offenders except for "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, —— U.S. ——, 136 S.Ct. at 734. Montgomery was sentenced to life imprisonment without the possibility of parole for killing. a deputy sheriff when Montgomery was 17 years old. *Id.* at ——, 136 S.Ct. at 725. The Court repeated its legal determination that "the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' " *Id.* at ——, 136 S.Ct. at 734 (quoting *Miller*, 567 U.S. at 472, 132 S.Ct. 2455).

The Court then explained that the purpose of a *Miller/Montgomery* hearing[2] is to consider a juvenile "offender's youth and attendant characteristics" to determine whether the juvenile is one "whose crimes reflect permanent incorrigibility" and thus may be sentenced to life imprisonment without the possibility of parole. *Id.* at ——, 136 S.Ct. at 734. The Court highlighted the crux of its decision:

> In light of what this Court has said in *Roper*, *Graham*, and *Miller* about how children are constitutionally different from adults in their level of culpability, ... prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored.

*Id.* at ——, 136 S.Ct. at 736-37.

Viewed as a whole, the Supreme Court's Eighth Amendment jurisprudence dictates that sentencing courts must honor the ·constitutional differences between children and adults and treat juvenile offenders differently. As the Court stated in

**2.** Because *Montgomery* changed the nature of the *Miller* hearing, I use the term *"Miller/Montgomery* hearing" to refer to a hearing that is used to determine whether a juvenile offender who commits homicide falls within the group of "the rarest of juvenile offenders, those whose crimes reflect ˙permanent incorrigibility." *Montgomery*, —— U.S. ——, 136 S.Ct. at 734.

*Miller*, "none of what [*Graham*] said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific. Those features are evident in the same way, and to the same degree, when ... a botched robbery turns into a killing." 567 U.S. at 473, 132 S.Ct. 2455. In affirming Mahdi's aggregate minimum sentence of 90 years in prison, the majority allows juvenile offenders like Mahdi to be deprived of liberty for life without prior consideration of their youth, attendant characteristics, and prospects for reform to determine whether they belong to "the rarest of juvenile offenders ... whose crimes reflect permanent incorrigibility." *Montgomery*, —— U.S. ——, 136 S.Ct. at 734. This ruling is inconsistent with the Eighth Amendment.

To be consistent with the underlying principles and logic of *Roper*, *Graham*, *Miller*, and *Montgomery*, the characteristics of youth and the prospects for rehabilitation must be evaluated before a juvenile offender is condemned to a lifetime in prison, no matter whether the juvenile committed one offense or multiple offenses. I agree with the New Jersey Supreme Court, which recently held, following *Montgomery*, that when sentencing juvenile defendants, "[t]he proper focus belongs on the amount of real time a juvenile will spend in jail and not on the formal label attached to his sentence." *State v. Zuber*, 227 N.J. 422, 152 A.3d 197, 201, 215 (2017) (holding that *Miller* applies to two juvenile offenders, including a juvenile homicide defendant who received an aggregate sentence of 75 years in prison with over 68 years to be served before eligible for parole). The court explained that the "force and logic of *Miller*'s concerns apply broadly: to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on differ-

ent occasions; and to homicide and non-homicide cases." *Id.* at 212. Accordingly, it held: "[B]efore a judge imposes consecutive terms that would result in a lengthy overall term of imprisonment for a juvenile, the court must consider the *Miller* factors along with other traditional concerns." *Id.* at 201-02.

Following *Montgomery*, state supreme courts have addressed the question of whether the holding in *Miller* applies to juvenile defendants sentenced to the practical equivalent of life imprisonment without the possibility of parole. A majority have concluded that the principles of *Roper*, *Graham*, *Miller*, and *Montgomery* apply equally to any juvenile offender who faces a lifetime in prison. *See, e.g.*, *Atwell v. State*, 197 So.3d 1040, 1044, 1050 (Fla. 2016) (reversing a juvenile homicide offender's sentence that imposed a presumptive parole date 140.5 years after the crime because his sentence "effectively resembles a mandatorily imposed life without parole sentence, and he did not receive the type of individualized sentencing consideration *Miller* requires"); *People v. Reyes*, 407 Ill.Dec. 452, 63 N.E.3d 884, 888 (2016) (holding that a juvenile homicide offender's mandatory term-of-years sentences equaling life imprisonment without parole violated the Eighth Amendment; stating that "*Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation"); *State v. Garza*, 295 Neb. 434, 888 N.W.2d 526, 537 (2016) (concluding that the term-of-years sentence imposed under the newly amended sentencing laws following *Miller* was constitutional because all the *Miller* factors were considered at sentencing); *Zuber*, 152 A.3d at 211-12; *State v. Moore*, 76 N.E.3d 1127, 1143, 2016 WL 7448751, at *7-16 (Ohio Dec. 22, 2016) (applying *Gra*-

*ham* and *Miller* retroactively to a nonhomicide offender convicted of 12 offenses and sentenced to 141 years in prison when he was a juvenile); *State v. Ramos*, 187 Wash.2d 420, 387 P.3d 650, 659-60, 667 (2017) (holding that *Miller* applies to de facto life-without-parole sentences, but affirming the juvenile homicide offender's term-of-years sentences totaling 85 years because the offender received an adequate *Miller* hearing at resentencing). *But see Vasquez v. Commonwealth*, 291 Va. 232, 781 S.E.2d 920, 931 (2016) (holding that nonhomicide juvenile offenders' multiple term-of-years sentences did not violate the Eighth Amendment because *Graham* does not dictate that "multiple sentences involving multiple crimes be treated, for Eighth Amendment purposes, in exactly the same manner as a single life-without-parole sentence for a single crime").

The State cites the Supreme Court's dictum in *O'Neil v. Vermont*, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450 (1892), to assert that it is constitutionally permissible to punish a person who commits two or more crimes more severely than a person who commits a single crime. Based upon *O'Neil*, the State proposes that we hold that "the fit between a crime and sentence should be viewed independently, rather than in the aggregate, in determining whether a sentence is cruel and unusual." But the dictum in that case, decided some 113 years before the first of the Supreme Court's landmark rulings concerning Eighth Amendment limits on juvenile sentencing, runs headlong into the essence of *Miller* and *Montgomery*: that "children are constitutionally different from adults for purposes of sentencing" because of their "diminished culpability and greater prospects for reform." *Montgomery*, —— U.S. ——, 136 S.Ct. at 733 (citing *Miller*, 567 U.S. at 471, 132 S.Ct. 2455).

The majority states that, in cases involving consecutive sentences that are the functional equivalent of life imprisonment without the possibility of parole, "every state supreme court and federal circuit that has acknowledged the United States Supreme Court's dictum in *O'Neil* has rejected an Eighth Amendment challenge to consecutive sentences." But most of the cases cited to support this statement considered sentences imposed on adult offenders, not juveniles. *See United States v. Aiello*, 864 F.2d 257, 260 (2d Cir. 1988); *State v. Hairston*, 118 Ohio St.3d 289, 888 N.E.2d 1073, 1076 (2008); *State v. Buchhold*, 727 N.W.2d 816, 818-19 (S.D. 2007). And the two cases cited that involved juveniles were decided without the benefit of the Supreme Court's decisions in *Roper*, *Graham*, *Miller*, or *Montgomery*. *See Hawkins v. Hargett*, 200 F.3d 1279, 1280 (10th Cir. 1999); *Close v. People*, 48 P.3d 528, 531 (Colo. 2002). In addition, since *Roper*, no state supreme courts or federal circuit courts have adopted the *O'Neil* dictum in a juvenile sentencing case.[3]

3.  Recently, the Tenth Circuit Court of Appeals reversed a denial of a writ of habeas corpus in a case involving a juvenile offender who was sentenced to three consecutive life sentences for nonhomicide crimes. *Budder v. Addison*, 851 F.3d 1047, 1060 (10th Cir. 2017). The district court had reasoned that extending *Graham* to the consecutive sentences would be "contrary to the traditional focus of Eighth Amendment analysis, which, the Tenth Circuit has repeatedly stated, is 'on the sentence imposed for each specific crime, not on the cumulative sentence or multiple crimes.'" *Budder v. Addison*, 169 F.Supp.3d 1213, 1220 (W.D. Okla. 2016), *rev'd*, 851 F.3d 1047 (10th Cir. 2017) (quoting *Hawkins*, 200 F.3d at 1285 n.5). Nevertheless, the Tenth Circuit concluded that under the "clearly established" categorical rule in *Graham*, the juvenile's sentence, which required him to serve 131.75 years in prison before he would be eligible for parole, violated the Eighth Amendment. *Budder*, 851 F.3d at 1059.

Before sentencing Mahdi to three consecutive sentences of life, with the possibility of parole after a total of 90 years in prison, the district court did not hold a *Miller/Montgomery* hearing to review evidence such as expert testimony to determine whether Mahdi belonged to the group of juveniles whose crimes reflect irreparable corruption. The State contends that a formal hearing was not required in this case because "[a] plethora of information regarding [Mahdi's] youthful age, personal background, and unique circumstances was presented to [the sentencing court] prior to and during trial," and the court considered all of that in sentencing. But a properly conducted *Miller/Montgomery* sentencing hearing is critical for any juvenile offender who is facing a lifetime in prison because, as the Supreme Court acknowledged, "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S. at 573, 125 S.Ct. 1183.

I would therefore hold that the Eighth Amendment, as interpreted by *Miller* and *Montgomery*, requires that a juvenile offender receive an individualized hearing to determine whether that offender belongs to the group of juveniles whose crimes demonstrate permanent incorrigibility before consecutive sentences are imposed that result in the functional equivalent of life imprisonment without the possibility of release. Because of the passage of time since Mahdi was first sentenced, it is not possible to hold a fair and meaningful *Miller/Montgomery* hearing in this case. *See Jackson v. State*, 883 N.W.2d 272, 280 (Minn. 2016) (holding that because of the passage of 10 years and a lack of a record on the juvenile offender's youthful characteristics, a fair and meaningful *Miller/Montgomery* hearing was not possible

and remanding to the district court for imposition of a sentence of life imprisonment with the possibility of release after 30 years). Consequently, I would reverse and remand this case to the district court for the imposition of three concurrent sentences of life imprisonment with the possibility of release after 30 years in accordance with *Miller*, *Montgomery*, and our recent decision in *Jackson*.

I note, however, that even if Mahdi received three concurrent sentences, he would not necessarily experience life in the community again. With three *concurrent* sentences of life imprisonment with the possibility of release after 30 years, Mahdi would not be eligible for release before he turns 47 years old. The current statutory scheme requires that a community investigation report be completed before supervised release is authorized. *See Jackson*, 883 N.W.2d at 281 n.8 (citing Minn. Stat. § 244.05, subd. 5(b) (2014)). "The report includes the views of the victim's family, the sentencing judge, the prosecutor, and law enforcement personnel involved in the case." *Id.* "The report is evaluated by an advisory panel of corrections specialists to consider the inmate's case history, including the facts and circumstances of the offense, past criminal history, institutional adjustment, program team reports, psychological and psychiatric reports, and the results of community investigations." *Id.* (citing Minn. R. 2940.1800, subp. 2 (2015)). Accordingly, public safety and the interests of the victims' families will be carefully considered before any eventual release could be approved.

In sum, the principle that children are constitutionally different from adults in their level of culpability has been firmly established by a line of decisions of the United States Supreme Court that begins with *Roper* and culminates in a substantive rule announced in *Miller* that was affirmed

in *Montgomery*. This rule prohibits sentencing a juvenile to life imprisonment without the possibility of release unless it is determined that he or she belongs to "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, —— U.S. at ——, 136 S.Ct. at 734. To be sure, the United States Supreme Court has not expressly extended this substantive rule to juveniles who receive consecutive sentences that are the functional equivalent of life imprisonment without the possibility of release. But the foundational principle animating its Eighth Amendment decisions regarding juveniles is crystal clear: "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Miller*, 567 U.S. at 474, 132 S.Ct. 2455. Accordingly, I respectfully dissent.